UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

IN RE:

SIMPLY ESSENTIALS, LLC,

Debtor(s).

CHAPTER 7
CASE NO. 20-00305

_____

**TRUSTEE'S MOTION TO SELL AND FOR OTHER RELIEF**
**11 U.S.C. §§363(b) AND (f));**
**MOTION TO APPROVE BID PROCEDURES**

COMES NOW Chapter 7 Trustee Larry S. Eide and moves the Court for an order granting this Motion, and in support thereof respectively states:

1.      On March 6, 2020, an Involuntary Petition was filed against the Debtor.

2.      On September 20, 2020, an order for Relief was entered by this Court and the undersigned was thereafter appointed and qualified as Trustee.

3.      Among the assets being administered by the Trustee are two (2) parcels of real estate, including the following:

a.      Approximately 3.1 acres locally known as 901 N. Main Street, Charles City, Floyd County, Iowa, legally described on the attached Exhibit A (the "Processing Plant Real Estate") and on which there is located a processing plant and offices; and,

b.      Approximately 9.7 acres locally known as 300 Lawler Street, Charles City, Floyd County, Iowa, legally described on the attached Exhibit B (the "Parking Lot and Live Barn Real Estate"), and on which there is located a parking lot and live barn.

The Processing Plant Real Estate and the Parking Lot and Live Barn Real Estate are collectively hereinafter called the "Real Estate". The legal descriptions set forth on Exhibit A and Exhibit B are believed to be true and correct, however modifications may be required to such legal descriptions to correctly conform to the real estate records in the Office of the Recorder of Floyd County, Iowa.

4.    The Trustee is also administering all tangible and intangible personal property owned by the Debtor, including, but not limited to, the assets described on the attached Exhibit C (said property excluding the "Excluded Property" described in Paragraph 5 below is called the "Personal Property"). The Personal Property includes a 140 bird per minute $CO_2$ stun, kill, scald, pick line, certain packaging and related equipment, and certain office equipment. It also includes various trademarks, website domain and other intellectual and intangible property which were owned and/or used by the Debtor in the operation of its business.

5.    For the purposes of and the proposed sale, the Personal Property does NOT include the following (the "Excluded Assets"):

a.    all rolling stock, including all motor vehicles and trailers subject to any certificate of title provisions under Iowa law;

b.    all permits and licenses to operate, to sell product and inventory, and to pay sales and other taxes;

c.    ARKK Food Company - Terra license;

d.    all income taxes receivable or deferred;

e.    all cash and cash equivalents;

f.    all accounts receivable and other rights to payment for merchandise sold, or for any other purpose;

g.    all insurance refunds and rebates relating to policies paid for by the Debtor; and,

h.    any refunds for returned goods and other rights to payment from vendors related to transactions.

6.    The Real Estate and the Personal Property (except the Excluded Assets) as above described shall hereinafter be called the "Assets".

7.      With respect to the Processing Plant Real Estate, the Trustee is credibly informed that Federal Agricultural Mortgage Corporation (hereinafter called "Farmer Mac") asserts a validly perfected mortgage. The Trustee further reasonably believes that no party claims a superior interest in the Processing Plant Real Estate, other than Farmer Mac's assertion of a mortgage lien and liens on account of real estate tax.

8.      With respect to the Parking Lot and Live Barn Real Estate, the Trustee is credibly informed that Pitman Farms (hereinafter called "Pitman Farms") asserts a validly perfected mortgage. The Trustee further reasonably believes that no party claims a superior interest in the Parking Lot and Live Barn Real Estate, other than Pitman Farms' assertion of a mortgage lien and liens on account of real estate tax.

9.      With respect to the Personal Property, the Trustee is credibly informed that Farmer Mac asserts a validly perfected security interest. The Trustee further reasonably believes that no party claims a superior interest in the Personal Property, other than the Farmer Mac assertion of a security interest.

10.     The Trustee is credibly informed that Farmer Mac and Pitman Farms have agreed between themselves as to a division of the gross sales proceeds whereby Farmer Mac shall be entitled to receive 96% of the gross sales price and Pitman Farms shall be entitled to receive 4% of the gross sales price, in each instance to be reduced by a *pro rata* share of the sale expenses described in Paragraph 17 of this Motion.

11.     The Trustee hired Heritage Global Partners, Inc., and Harry Davis & Company (hereinafter collectively called "Heritage") as a broker/auctioneer to market and sell the Assets. The contact information for these parties is:

Heritage Global Partners, Inc.
12625 High Bluff Drive #305
San Diego, California 92130
Attn: David Barkoff
Email: dbarkoff@hginc.com
Telephone: 508.403.5077
Mobile: 650.759.2242
Facsimile: 248.855.2388

Harry Davis & Company
1725 Boulevard of the Allies
Pittsburgh, Pennsylvania 15219
Attn: Lenny Davis
Email: ldavis@harrydavis.com
Telephone: 412.7652.1170
Mobile: 412.901.0895
Facsimile: 412.765.0910

12.    As of May 17, 2021, multiple bids were received by Heritage for the property as a whole and as a so-called "turnkey" operation.

13.    On or before May 17, 2021, the Trustee concluded that the bid of Pure Prairie Farms, Inc. was the highest and best offer, and the Trustee accepted that bid in writing, a copy of which is attached hereto as Exhibit D (the "Accepted Bid").

14.    Briefly and generally, the Accepted Bid provides for the Trustee to sell the Assets, free and clear of all liens, claims, titles, encumbrances, interests, and rights for a total gross cash price of $9,500,000.00, payable as follows:

a.    an initial deposit in the sum of $500,000.00 which has been received from Pure Prairie Farms, Inc., and which is refundable if it is not the successful bidder,

b.    the balance of the purchase price is due and payable at closing, which shall take place 20 days after the entry of an order by this Court approving the sale.

15.    The Accepted Bid further provides that in the event of any objection to the proposed purchase shall result in the Assets being subject to further and greater bids, with the minimum bid increment to be $100,000.00.

16.    The Accepted Bid does **not** provide for any break-up fee.

17.    Subsequent to May 17, 2021, the Trustee received an offer of $10,000,000.00 from Wincorp International[1], and the Trustee determined that he cannot

---

[1] An affiliated entity of Wincorp international, the Best Dressed Chicken, Inc., will be the actual purchaser. The parent entity of Wincorp International, Jamaica Broilers Group Limited, provided proof of the source of funds.

accept that higher offer because of his prior acceptance of the Accepted Bid. The Trustee anticipates that this third party, and possibly other parties, will object to this Motion, and thereafter the Court will approve the bid procedures described below, and thereafter the Trustee will conduct an auction at which the Trustee anticipates that the third party, and possibly other parties, will submit bids higher than that of the Accepted Bid.

18.     The Trustee reserves the right to negotiate and/or enter into a backup bid agreement (in a form similar to the Accepted Bid) with The Best Dressed Chicken, Inc. even after the filing of this Motion. If such backup bid agreement is entered into, the Trustee will notify the Court and all parties on the Rule 2002 list, all other known bidders, and other parties deemed necessary by the Trustee, of the same.

19.     The order approving this Motion should provide that any and all liens, claims, titles, encumbrances, interests, and rights asserted by Farmer Mac and Pitman Farms will attach to the gross proceeds from the highest and best court-approved sale, in whatever order of priority that existed as of the commencement of this case, EXCEPT that Farmer Mac and Pitman Farms have agreed that:

a.      any Real Estate Transfer Tax due pursuant to Iowa Code Chapter 428A shall be released and paid from the gross sales proceeds,

b.      all real estate taxes due at the time of conveyance of the Real Estate by the Trustee to the purchaser, together with real estate taxes prorated to the date of said conveyance shall be released and paid from the gross sales proceeds,

c.      the compensation due to Heritage shall be released and paid from the gross sales proceeds. The application to employ Heritage provides the following for compensation:

For a turnkey sale, Brokers shall receive a commission of five percent (5%) of the gross sales price of the Property, provided that the commission shall be reduced to three percent (3%) in the event that the Minnesota Growers Group or Pittman (sic) Family Farms is the successful

purchaser. In addition, Brokers shall advance all expenses necessary to prepare, market and conduct the turnkey sale process, and shall be entitled to $25,000.00 for expense reimbursement (the Turnkey Allowance). In the event that a turnkey sale does not occurs, the Property will be sold by auction.

The proposed purchaser, Pure Prairie Farms, Inc., is the Minnesota Growers Group.

d.     a sum equal to 0.75% of the gross proceeds shall be released from the gross proceeds, and such sum shall be free and clear of any and all claims, liens, titles, interests, and rights, and the Trustee and the estate may use such sum for any and all purposes, pursuant to the provisions of Title 11, including but not limited to the payment of administrative claims and expenses and, if available, to the payment of various non-administrative claims (such as general unsecured claims).

20.     More specifically, with respect to the Assets, because no one disputes that the Debtor owns the Real Estate in fee simple absolute, and the Personal Property absolutely, subject only to Farmer Mac's mortgage and security interest and Pitman Farms' mortgage, and since both are consenting to the sale free and clear of their liens, the Trustee seeks permission from this Court to effectuate the sale pursuant to 11 U.S.C. §363(f)(2). Except as provided in Paragraph 18, all such mortgages, liens and encumbrances, and any and all rights, titles, claims, interests, and liens of any and all parties in interest will attach to the gross proceeds from the sale, in the same order of priority as it existed as of the time of the commencement of this case, and will be held by the Trustee, subject to further order from this Court.

21.     If a dispute arises as the validity of the mortgage liens of either Farmer Mac or Pitman Farms, and/or the security interest of Farmer Mac in the Personal Property, the Trustee alternatively seeks permission from this Court to sell the Real Estate and Personal Property pursuant to 11 U.S.C. §363(f)(4).

22.     To consummate the sale, the Trustee will execute a Court Officer's Deed (a form thereof is attached as <u>Exhibit E</u>) with respect to the Real Estate, one or more Bills of Sale (a form thereof is attached as <u>Exhibit F</u>) with respect to the Personal Property, one or more assignments of intellectual property or other intangible property that is a part of the Assets, and other appropriate transfer documents.

23.     The successful bidder will be granted title, pursuant to this Court's order approving this Motion, to all the Assets, free and clear of any and all claims (including, but not limited to, any and all environmental claims and successor liability claims), liens, interests, titles, rights and encumbrances. <u>Otherwise, the sale is "As Is Where Is."</u>

24.     Subject to the receipt of a higher bid, the Trustee submits that the sale proposed in this Motion is in the best interest of the estate, the creditors and the community. This is so because a sale will generate much-needed cash to enable the Trustee to administer this case, and will hopefully enable the successful bidder to use the Assets in the operation of a business for the good and benefit of the successful bidder, and to the betterment of the community and the public interest.

25.     The Trustee submits that the Accepted Bid was negotiated at arm's length, in good faith, and with the opportunity to obtain the assistance of and advice from counsel.

26.     The Trustee requests that the Court schedule two (2) hearings on this Motion, the first hearing being a telephonic hearing at which the Motion and any timely filed objections will be heard, and the second hearing, if necessary, being an in-court hearing after the Trustee conducts any auction of the Assets deemed necessary by the Court.

27.     In the event that an objection is filed and the Court determines that the

Trustee should entertain and/or accept additional bids, the Trustee requests that the

following be approved as bid procedures:

a.      All parties desirous of participating in the additional bid process must provide the Trustee and Heritage with his/her/its contact information (including name, address, telephone number, facsimile number, and email address) no later than 5:00 p.m. CDT on the **second** business day after the conclusion of the telephonic hearing on this Motion at which the bid procedures are approved;

b.      All parties desirous of participating in the additional bid process must provide the Trustee with a good faith deposit either in the form of an irrevocable letter of credit for $500,000.00 or a cash deposit with the Trustee in the amount of $500,000.00 no later than 5:00 p.m. CDT on the **third** business day after the conclusion of the telephonic hearing on this Motion at which the bid procedures are approved;

c.      All parties desirous of participating in the additional bid process, including Pure Prairie Farms, Inc., must provide the Trustee and Heritage with evidence of an ability and the financial wherewithal, as determined solely by the Trustee, to consummate the sale transaction no later than 5:00 p.m. CDT on the **fourth** business day after the conclusion of the telephonic hearing on this Motion at which the bid procedures are approved;

d.      Participation by a party in the additional bid process shall be deemed to be, for all purposes, an acknowledgment and representation by such party that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making a bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether expressed, implied, by operation of law or otherwise regarding the Assets, and has completed all due diligence required by such party to submit an informed and knowledgeable bid for the assets;

e.      The auction shall be conducted telephonically by the Trustee or Heritage, and shall commence promptly at 11:00 a.m. CDT on the **sixth** business day after the conclusion of the telephonic hearing on this Motion at which the bid procedures are approved;

f.      At the auction, the bidding will start with the $9,500,000.00 bid of Pure Prairie Farms, Inc., and the initial overbid at the auction shall be not less than $200,000.00, with all subsequent overbids to be not less than $100,000.00;

g.      The Trustee and the highest bidder at the auction shall promptly execute a written document similar to and not more inclusive than the Accepted Bid between the Trustee and Pure Prairie Farms, Inc. attached as <u>Exhibit D</u>, which written document will memorialize the highest bid;

h.      To facilitate a deliberate and orderly bidding process, Heritage and/or the Trustee may adjourn the auction at any time and from time-to-time; and,

i.      The Trustee, in consultation with Heritage, shall have the right to adopt such other rules for the auction (including rules that may depart from those set forth herein) that the Trustee determines in his business judgment will promote the goals of an auction, including promoting the highest or otherwise best value for the Debtor's Assets.

28.      The bid of Pure Prairie Farms, Inc., or such higher bid as is received at any auction conducted by the Trustee, shall be subject to approval by the Court. If no objection to the bid of Pure Prairie Farms, Inc. is timely filed, such bid may be approved by the Court at or following the initial telephonic hearing on this Motion. If an objection is filed to this Motion, and the Court determines that the Trustee should entertain and/or accept additional bids, the highest and best bid received at such auction shall be presented to the Court for approval.

29.      The Trustee will file a separate application seeking authority to fix and authorize payment of compensation to Heritage upon consummation of the sale.

30.      The Trustee will file a separate application seeking authority to sell at auction certain rolling stock.

31.      Any order approving this Motion should also provide the 14-day stay period in F.R.B.P. 6004(h) is inapplicable. Such a provision will enable an expeditious closing, and will minimize administrative claim (such as utility bills, real estate taxes, etc.) that will be incurred and inflicted against the estate. A form of proposed order is appended hereto.

WHEREFORE, the Trustee respectively prays this Court, on such notice and hearing as is required, enter and enroll an order granting the relief requested by the Trustee in this Motion, and for such other relief as may be just and property under the premises.

DATED:       June 21, 2021

 /s/ Larry S. Eide
Larry S. Eide, Trustee (AT0002317)
PO Box 1588
Mason City, Iowa 50402-1588
Telephone: 641.423.4264
Facsimile: 641.423.3145
Email: eide@pappajohnlaw.com

## CERTIFICATION OF SERVICE

The undersigned, Larry S. Eide, certifies that on June 21, 2021, he served a copy of the foregoing document on the United States Trustee, Debtor(s), attorney for Debtor(s) and other parties having requested notice pursuant to Rule 2002 electronically on all parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing, and by ordinary United States mail, postage prepaid, addressed as follows on all other parties:

Terry L. Gibson
Wandro & Associates, P.C.
2501 Grand Avenue, Suite B
Des Moines, IA 50312

Riley C. Walter
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
Fresno, CA 93720

Abram Carls
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, IA 52401-1266

Eric W. Lam
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, IA 52401-1266

Jackson C. Blais
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, IA 52401-1266

Brandon R. Tomjack
1500 Woodmen Tower
Omaha, NE 68102-2068

Joseph A. Peiffer
Ag & Business Legal Strategies
1350 Boyson Road, Suite B
PO Box 11425
Hiawatha, IA 52233-2211

Michael P. Mallaney
Shindler, Anderson, Goplerud & Weese, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265-5749

Kayla L. Sproul
Shindler, Anderson, Goplerud & Weese,
P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265-5749

Kristina M. Stanger
Nyemaster, Goode, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899

Todd J. Ohlms
Proskauer Rose LLP
70 West Madison, Suite 3800
Chicago, IL 60602-4342

Daniel Desatnik
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

Thomas L. Flynn
Brick Gentry, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266

James L. Snyder
Acting United States Trustee
United States Federal Courthouse
111 7th Avenue SE, Box 17
Cedar Rapids, IA   52401-2101

 /s/ Larry S. Eide
Larry S. Eide (AT0002317)