UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>SIMPLY ESSENTIALS, LLC,<br><br>Debtor | Chapter 7<br><br>Bankruptcy No. 20-00305 |

## RULING ON TRUSTEE'S MOTION TO COMPROMISE AND TO SELL PROPERTY

This matter came before the Court by evidentiary hearing on January 26, 2022. Trustee, Larry Eide, filed a Motion to Compromise under Rule 9019(b) and a Motion to Sell Property Free and Clear of Liens under 11 U.S.C. § 363(f). He appeared at the hearing with his counsel, Dan Childers and Wes Huisinga. ARKK Food Company, Inc. ("ARKK") joined the Trustee's Motions and made the offer to purchase and to have its claim compromised as part of that offer. ARKK appeared at the hearing with its counsel Kristina Stanger, Leslie Behaunek, Daniel Desatnik, and Todd Ohlms. Pitman Farms ("Pitman") objected to both Motions and argued that Pitman's own competing offer should be accepted instead. Pitman appeared with its counsel, Eric Lam. The Petitioning Creditors, who originally filed this bankruptcy as an involuntary case, and Prairie's Best Farm, Inc., appeared through counsel Austin Peiffer. The Petitioning Creditors fully support the Trustee's

Motions. Terry Gibson appeared for Debtor Simply Essentials ("Debtor"), taking no position on the matter. These Motions present core proceedings under 28 U.S.C. § 157(b)(2). At the conclusion of evidence, the parties argued the case and informed the Court no further briefing was necessary. Within days, Pitman filed a Motion for Extension of Time to Submit and Consider Revised Offer. The matter was set for hearing in early February but was resolved before the hearing.

### STATEMENT OF THE CASE

Trustee presented evidence in a full-day evidentiary hearing in support of his Motions to Compromise and Motion to Sell Causes of Action (Chapter 5 avoidance actions) free and clear of liens. ARKK also presented evidence in support of Trustee's Motions. ARKK and other creditors and interested parties—other than Pitman—argued in favor of approval of the Motions. Pitman argued against the Motions asserting: (1) the causes of action Trustee was attempting to sell are not property of the estate that Trustee has authority to sell, and (2) Trustee has failed his burden of proof to sustain his Motions because Trustee has a better offer from Pitman that he should accept instead in the best interest of the estate. For the reasons that follow, the Court grants the Motions of the Trustee and approves the settlement.

**FACTUAL BACKGROUND AND FINDINGS OF FACT**

Trustee moved the Court to approve a compromise with ARKK and to approve the Sale of Trustee's avoidance actions against Pitman to ARKK. ARKK's offer consisted of the following: (1) reducing its claim against the bankruptcy estate from $23.4 million to $2.5 million; and (2) receiving all the funds recovered on Trustee's avoidance actions up to $600,000, followed by payment of ARKK's fees and expenses in litigating the claims, and afterward 15% of the recovery for the estate from all avoidance actions beyond $600,000.

Pitman made a competing offer to buy the same claims for $1 million in cash with no other conditions. Trustee received the offers in a bit of a herky jerky fashion: (1) ARKK offer; (2) Pitman offer; (3) Pitman amended offer; and (4) an ARKK offer adding the first $600,000 from recovery of the avoidance actions just before the hearing.

Trustee carefully analyzed these competing offers—even though they were essentially apples and oranges. Trustee is one of the most experienced Chapter 7 trustees and bankruptcy lawyers in Iowa. He enjoys an excellent reputation.

Trustee testified at length. He noted the estate did not have sufficient funds to pursue these Chapter 5 avoidance actions (i.e., §§ 544–550) against Pitman. Trustee believes those causes of action appear to have merit and could provide a very large recovery to the estate. Trustee thus seeks to sell the actions for a

reasonable price to realize as much as possible for the creditors and interested parties.

Trustee explained the two competing offers he had and how he analyzed them with the assistance of his experienced counsel and the input of other parties. He acknowledged that comparison of the offers was made difficult by the vast differences in their structure. Trustee concluded, however, that after weighing all the variables and difficulties of the analysis, accepting the ARKK offer was in the best interest of the estate and its creditors.

Pitman presented through its counsel a thoughtful and extensive cross-examination of the Trustee. Trustee provided candid responses and conceded that Pitman made many good points in favor of its offer and against that of ARKK. Trustee acknowledged that $1 million was a good offer that was hard to turn down. Trustee acknowledged that it was possible that the estate could ultimately receive less than $1 million in total recovery under ARKK's proposal. He noted it would take more than $5 million in recovery by ARKK from Pitman for the estate to receive more than $1 million in recovery. Trustee did note, however, that he believed there was a substantial likelihood of recovering more than $1 million for the estate under ARKK's proposal—possibly even far in excess of $1 million. Trustee essentially noted that both offers were good, but that he still believed ARKK's would be in the best interest of the estate.

ARKK, too, elicited testimony from Trustee favorable to its offer. ARKK also provided testimony from its CEO to establish the merits of the causes of action and the underlying facts that would establish a recovery for the estate under ARKK's offer that could far exceed Pitman's offer.

After all the evidence, the Court asked the Trustee whether anything that was presented at the hearing had changed his mind. He said "no." The Court then asked the other parties—particularly the Petitioning Creditors—the same question. They, too, responded with a "no." Thus, everyone taking a position at the hearing, other than Pitman, fully supported the Trustee's Motion.

The Court then pressed Pitman's counsel for some additional explanation to support its position. Pitman's counsel noted that it had always taken the position—in its briefing and objections to Trustee's Motions—that there was a threshold legal issue that fully supported Pitman: whether the causes of action were property of the estate salable by Trustee under § 363. Pitman argued the causes of action were not property of the estate and thus no sale was legally allowed.

The Court expressed skepticism about Pitman's "property of the estate" argument. ARKK and counsel for the Trustee responded with similar skepticism. The Court noted it would nevertheless take the matter under advisement to review that issue and the others raised.

## CONCLUSIONS OF LAW

The matter before the Court is Trustee's Motions to Approve Settlement and a Sale under § 363 of estate property (causes of action) as part of that settlement. There are only two issues left to be resolved: (1) whether the causes of action are property of the estate that can be sold under § 363; and (2) if so, whether Trustee has satisfied the standards for approving the settlement—which includes the sale.

**I. Are Trustee's Causes of Action Property of the Estate that Trustee Can Sell?**

Pitman has argued throughout that the issues before the Court depend on a legal question: Are Chapter 5 causes of action property of the estate the Trustee can sell?

After the close of evidence, the Court heard argument on all factual and legal issues. Frankly, the Court was skeptical, if not somewhat dismissive, of Pitman's "property of the estate" argument. The Court and other parties all expressed this attitude by asking: What are these causes of action if not property of the estate?

The Court now concedes that its questioning, and perhaps even its tone, with Pitman's counsel was misplaced. The "property of the estate" issue Pitman raises is far from fanciful or frivolous. There is much caselaw discussing the issue. Some of that caselaw is favorable to Pitman's argument.

The following cases have addressed the issue in some detail: Nelson v. Ramette (In re Nelson), 274 B.R. 789 (B.A.P. 8th Cir. 2002); In re Brown, 953 F.3d 617 (9th Cir. 2020); In re Wyman, 626 B.R. 480 (Bankr. S.D. Ohio 2021); In re EPD Inv. Co., LLC, No. 2:10-BK-62208-ER, 2020 WL 6937351 (Bankr. C.D. Cal. Oct. 29, 2020); Callahan v. Roanoke Cnty. (In re Townside Constr., Inc.), 582 B.R. 407 (Bankr. W.D. Va. 2018); In re Porrett, 547 B.R. 362 (Bankr. D. Idaho 2016); Official Comm. of Unsecured Creditors v. UMB Bank (In re Residential Capital, LLC), 497 B.R. 403 (Bankr. S.D.N.Y. 2013); Collins v. Fed. Land Bank of Omaha, 421 N.W.2d 136 (Iowa 1988). They engage in a great deal of analysis—much of it addressing different subsections of 11 U.S.C. § 541(a). A law review note addressing this issue does a nice job capturing the many differing points of view. Brendan Gage, Is There a Statutory Basis for Selling Avoidance Actions?, 22 J. BANKR. L. & PRAC. 3 Art. 1 (2013).

One recent case tries to encompass most, if not all, of the various arguments. In re Murray Metallurgical Coal Holdings, LLC, 623 B.R. 444, 504–19 (Bankr. S.D. Ohio 2021). The Court there carefully analyzed the competing arguments before concluding that Chapter 5 causes of action are, in fact, property of the estate that can be sold. This Court adopts the excellent rationale and conclusion of Murray Metallurgical.

The plain meaning of the Bankruptcy Code also supports this position. Section 541(a)(7) provides that property of the estate includes "any interest in property that the estate acquires after the commencement of the case." The Court noted this section responding to Pitman's argument that § 541(a)(1) provides no authority because it specifies that Debtor's property—which these claims could not be—belongs to the Trustee in a Chapter 7 proceeding. In other words, § 541(a)(1) works as Pitman claims—allowing Debtor's property, not Trustee's property, to belong to the estate. Section 541(a)(7) provides that "any interest in property that the **estate acquires** after commencement of the case" is property of the estate. (emphasis added). There is no argument from Pitman that the estate does not acquire the causes of action after commencement of the case. Pitman argues only that § 541(a)(7) only deals with the money received after the Trustee won its cause of action. Murray Metallurgical, 623 B.R. at 512 (quoting Smith v. Morris R. Greenlaw Oil & Gas, Inc. (In re Greenlaw Energy, Inc.) 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007). There is no such limitation to the language of § 541(a)(7), and the Court declines Pitman's invitation to read one in.

The Eighth Circuit has noted the definition of property of the bankruptcy estate is "very broad and includes property of all descriptions, tangible and intangible, as well as causes of action." In re Nelson, 274 B.R. at 791 (quoting Whetzal v. Alderson, 32 F.3d 1302, 1303 (8th Cir. 1994)).

8

> Prior to enactment of the Bankruptcy Act of 1978, the United States Supreme Court specifically considered the definition and the reach of the term "property" in Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), stating that "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal v. Rochelle, 382 U.S. at 379, 86 S.Ct. at 515, 15 L.Ed.2d at 432. When Congress enacted Section 541 of the Bankruptcy Code, it affirmatively adopted the Supreme Court's analysis of property that was contained in Segal. Barowsky v. Serelson, 946 F.2d 1516, 1518 (10th Cir. 1991) (footnote and citations omitted). Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include all of the debtor's interests, both legal and equitable. Matter of Yonikus, 996 F.2d 866, 869 (7th Cir. 1993) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204–05 and nn. 8, 9, 103 S.Ct. 2309, 2313 and nn. 8, 9, 76 L.Ed.2d 515 (1983)). The breadth of Section 541 is limited only by subsections (b) and (c). Courts have thus consistently held that Section 541 applies to contingent interests. See In re Neuton, 922 F.2d 1379, 1382–83 (9th Cir. 1990) (collecting cases).

In re Potter, 228 B.R. 422, 423–24 (8th Cir. B.A.P. 1999). When the language of § 541(a)(7) is broadly interpretted, an accrued cause of action—not just the actual money recovery—is property of the estate. As Murray Metallurgical noted, there are many cases noting that interests in property include "causes of action." Murray Metallurgical, 623 B.R. at 508, 511, 512. These cases include a Supreme Court case: United States v. Nordic Village, 503 U.S. 30, 37 (1992).

Other courts have reinforced this reading many times since Nordic Village was decided. "Legal causes of action are included within the broad scope of § 541." In re Bolton, 584 B.R. 44, 49 (Bankr. D. Idaho 2018) (quoting Goldstein v.

9

Stahl (In re Goldstein), 526 B.R. 13, 21 (9th Cir. B.A.P. 2015)); see also McGuire v. United States, 550 F.3d 903, 914 (9th Cir. 2009) (citing City & Cnty. of San Francisco v. PG & E Corp., 433 F.3d 1115, 1126 (9th Cir. 2006)). In discussing prepetition causes of action, one court observed:

> Contingent interests that exist upon filing but do not fully materialize until after filing have been considered property of the estate. See Segal v. Rochelle, 382 U.S. 375, 380 (1966) (finding a debtor's tax return that was received postpetition was property of the bankruptcy estate because it was for business losses suffered prepetition and was "sufficiently rooted in the pre-bankruptcy past."). Whether a debtor's cause of action is property of the estate, however, depends on if the cause of action accrued prior to the commencement of the bankruptcy case. See In re Smith, 293 B.R. 786, 788 (Bankr. D. Kan. 2003).

Williamson v. Peters, No. 17-2356-CM, 2018 WL 780554, at *2 (D. Kan. Feb. 7, 2018). This reasoning applies to Chapter 5 causes of action, which arise and accrue upon filing of the bankruptcy case. Under § 541(a)(7), at a minimum, these causes of action are property of the estate.

As further rationale this Court notes, as did the Supreme Court in Nordic Village, that a right to recover is "clearly a claim" as defined in § 101(5)(A) and is property of the estate under § 541(a). Nordic Village, 503 U.S. at 37. The Court further points out that claims as defined in § 101(5)(A) include "inchoate," or not yet fully realized, rights. Id. At the very minimum, a cause of action constitutes an inchoate right. Because the Supreme Court links the definitions of claims and property of the estate, a cause of action—even if merely an inchoate right—is still

10

property of the estate.  This same analysis has been used repeatedly by courts in determining property of the estate since the Nordic Village decision.

> "Property of the estate" includes all pre-petition interests of a debtor, including inchoate, contingent interests and assets not in the debtor's possession at the time of filing. Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ("The term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."). "By including all legal interests without exception, Congress indicated its intention to include all recognizable interests although they may be contingent and not subject to possession until some future time." Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6136).

In re Fasarakis, 423 B.R. 34, 37–38 (Bankr. E.D.N.Y. 2010).

One final reason supporting the Trustee and ARKK is that the Eighth Circuit has essentially rejected the rationale of some of the cases favorable to Pitman's argument.  These cases have held that Chapter 5 actions cannot be sold for pursuit by other parties because they fall under the Trustee's exclusive powers in the Code.  The Eighth Circuit rejected such a rationale when it affirmed and approved the right of another party to bring Chapter 5 avoidance actions on behalf of the estate when Trustee had declined (or was unable) to do so.  PW Enters. V. N.D. Racing Comm'n (In re Racing Servs.) 540 F.3d 892 (8th Cir. 2008).  The Eighth Circuit reasoned that if the action was for the benefit of the estate, a creditor could obtain derivative standing as long as the creditor showed that the action was both necessary and beneficial to the fair and efficient resolution of the bankruptcy

11

proceeding. Id. at 902. That reasoning is also fatal to Pitman's arguments. There is no question that pursuit of these causes of action is both necessary and beneficial to the proper administration of the estate.

Pitman relies on precedent from the Eighth Circuit Bankruptcy Appellate Panel in support of its argument that Chapter 5 actions are not considered property of the estate in this jurisdiction. In re Redding, 247 B.R. 474, 477 (8th Cir. B.A.P. 2000). There, the Court faced an argument by Trustee that attorney fees must be disgorged that were paid out of "funds wrongfully diverted out of the bankruptcy estate (and then back to the debtors)." Id. at 476. There was no action under § 548 or any attempt to avoid the transfers between a debtor and their son. In responding to Trustee's argument that the money belonged to the estate, the court said: "If the transfer to the debtor [sic] son was a fraudulent transfer, it may be avoidable by the trustee and recoverable from the son under §§ 548 and 550, but that does not make it property of the estate." Id. at 474. The question addressed was whether money transferred between debtors and their sons automatically becomes property of the estate. Redding addresses only the nature of the money not yet included in the estate, not whether a cause of action by Trustee could be property of the estate. This is a significant difference.

The case before the Court further highlights this difference. In this case, the argument is about whether causes of action (of unknown value) are salable

property of the estate. It is not whether $2 million, or $5 million, or $10 million of Pitman's money in its possession is property of the estate that can be sold. The Bankruptcy Appellate Panel's reasoning addressed the latter situation, not the former. The Bankruptcy Appellate Panel did not address the issue in this case and its ruling does not apply.

Even if this Court agreed with Pitman that Redding did address this situation, this Court would not follow it. Pitman's reading of Redding puts the Bankruptcy Appellate Panel at odds with the overwhelming weight of authority set forth above. The decisions of the Bankruptcy Appellate Panel, while normally persuasive and thoughtful, are nonetheless not binding precedent. For all these reasons the Court concludes that Pitman misreads Redding and the Court will not be bound by it.

The conclusion that Trustee's causes of action are property of the estate makes further sense for practical reasons. Trustees often are unable to pursue potential causes of action because the estate does not have funds on hand to do so—as in this case. To allow parties otherwise facing meritorious Chapter 5 avoidance claims to escape those claims because the Trustee cannot afford to pursue them and they cannot be sold or transferred would be an absurd result. That certainly was never intended by Congress. In enacting these provisions on property of the estate, Congress well knew that most estates would have no such

funds to pursue claims and would not have created such robust causes of action that could not be pursued in most cases.

The Code, case law, and common sense cut strongly against Pitman's argument. The Court concludes the causes of action proposed for sale here are property of the estate.

## II. Trustee's Proposed Settlement and § 363 Sale of Causes of Action is Supported by the Record

The Bankruptcy Code allows the Court to determine objections to claims and enables the Court to issue any order that is necessary or appropriate to carry out the provisions of the Code. 11 U.S.C. §§ 105(a), 502(b). The Federal Rules of Bankruptcy Procedure proscribe the means by which a court may authorize a compromise:

> (a) Compromise
>
> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to the creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.
>
> (b) Authority to Compromise or Settle Controversies within Classes
>
> After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Fed. R. Bankr. Pro. 9019(a), (b). In this case, the proposal to sell the Chapter 5 causes of action to ARKK to prosecute for itself and for the benefit of the

14

bankruptcy estate constitutes a compromise between the Trustee and ARKK under Rule 9019(b).

"The bankruptcy court has wide discretion in granting or denying approval of such agreements, and its decision cannot be disturbed on appeal absent clear abuse of discretion." In re Hildreth, No. 09-00293, 2012 WL 4250635, at *6 (Bankr. N.D. Iowa 2012) (quoting A&A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969)).  Settlements and compromises of the kind presently at issue are favored by the law.  In re Trism, Inc., 282 B.R. 662, 668 (B.A.P. 8th Cir. 2002) ("Compromise is favored by the law. . . . A major purpose of compromise is to avoid the expense, burdens, and uncertainty associated with litigation.") (citing In re Apex Oil Co., 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988)).  In determining whether a court should approve a settlement or compromise, the standard is "whether the settlement is fair and equitable and in the best interests of the estate." Hildreth, 2012 WL 4250635, at *6 (quoting Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008)).

When considering approving a settlement or compromise, a court need not find that the settlement "constitute[s] 'the best result obtainable.'"  Id. (quoting Tri-State Fin., 525 F.3d at 654).  "Rather, the court need only canvass the issues to determine that the settlement does not fall below the **lowest point** in the range of reasonableness." Id. (emphasis added) (quoting In re Martin, 212 B.R. 316, 319

15

(B.A.P. 8th Cir. 1997)); see also In re New Concept Housing, Inc., 951 F.2d 932, 938 (8th Cir. 1991) (citing Apex Oil, 92 B.R. at 867) (finding the same). **Substantial deference** should be given to the **Trustee's opinion**. Hildreth, 2012 WL 4250635, at *6; In re Receivership Est. of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003).

When analyzing a proposed settlement, a court should consider the four factors first established in Drexel:

> (a) [t]he probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929); see also Hildreth, 2012 WL 4250635, at *6 (analyzing these factors). A court should weigh the facts giving deference to the Trustee's opinion and his or her duty to expeditiously close the Chapter 7 estate against the reasonableness of the settlement and its benefit to the estate. See Hildreth, 2012 WL 4250635, at *6–7; 11 U.S.C. § 704(a)(1).

If a court concludes that it is in the best interest of the creditors to approve a settlement or compromise, and if the settlement or compromise "is fair, reasonable, and in the best interest of the estate," the Trustee's request should be granted. Hildreth, 2012 WL 4250635, at *6–7.

As the Court's findings of fact should make clear, the Trustee's testimony is credible and very persuasive. Trustee has vast experience and expertise that he brought to bear when evaluating the two offers. Trustee's reasons for choosing the ARKK offer were reasonable and thoughtful and the Court defers to those reasons.

Trustee acknowledged and demonstrated a full understanding of the trade-offs to be made by accepting either offer. It became abundantly clear that Trustee thought both offers would provide value to the estate and its creditors. Trustee explained clearly why he chose the ARKK offer. As the case law states, Trustee's opinion is entitled to substantial deference. The Court fully credits, accepts, and defers to Trustee's opinion here.

The Court finds and concludes that the ARKK offer is fair and reasonable. The Court defers to and accepts entirely the Trustee's opinion that the offer is in the best interest of the estate and its creditors. The opinons and views of other interested parties besides Pitman have provided unwavering support. The only party seriously objecting to the offer of ARKK is Pitman.

All of the key considerations favor the Trustee's opinion. The Court thus approves and grants all of the relief Trustee has sought.

## ORDER

The Court accepts and approves the Trustee's Motion to Compromise under Rule 9019(b). The Court approves and grants the Tustee's Motion Sell Property Free and Clear of Liens under 11 U.S.C. § 363(f).

Ordered: April 5, 2022

*/s/ Thad J. Collins*
Thad J. Collins
Chief Bankruptcy Judge