## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re:<br><br>Simply Essentials, LLC,<br><br>      Debtor. | Chapter 7<br><br>Case No. 20-00305 |
| ARKK FOOD COMPANY,<br><br>      Plaintiff,<br>v.<br><br>PITMAN FARMS,<br><br>      Defendant. | Adversary No. 23-_____ |

**COMPLAINT TO AVOID TRANSFERS PURSUANT TO
11 U.S.C. § 544, 547, AND 548 AND IOWA CODE § 684, TO RECOVER PROPERTY
TRANSFERRED PURSUANT TO 11 U.S.C. § 550 AND 551, AND TO DISALLOW
CLAIMS PURSUANT TO 11 U.S.C. § 502**

ARKK Food Company ("ARKK"), as representative of the Estate, as assignee of the "Pitman Causes of Action" as defined at (Docket # 256-1), files this complaint (the "Complaint") to avoid preferential and fraudulent transfers to and recover transferred property from Pitman Farms (the "Defendant" or "Pitman Farms") pursuant to sections 544, 547, 548, 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code") and chapter 684 of the Iowa Code, and to disallow any claims held by Defendant pursuant to section 502 of the Bankruptcy Code. In support of this Complaint, ARKK hereby alleges upon information and belief as follows:

## NATURE OF THE CASE

1.      Through this action, ARKK seeks to avoid, as preferential and/or fraudulent transfers, $1,155,403.34 in payments made by Simply Essentials, LLC (the "Debtor" or "Simply Essentials") to its sole member, Pitman Farms, in the one-year period prior to the filing of the involuntary petition on March 6, 2020 (Dkt. No. 1.), the two-year fraudulent transfer lookback window, and the 5-year lookback window under Iowa Code Chapter 684.

2.      These payments were made to Pitman Farms purportedly for providing health insurance and health care to Debtor's employees, for payments made by customers to Debtor which Pitman Farms claimed belonged to Pitman Farms, for processed chicken or duck, for refunds issued to Debtor which Pitman Farms claimed belonged to Pitman Farms, and for other, unidentified purposes.

3.      $764,322.66 of the $1,155,403.34 in payments ARKK seeks to avoid as preference payments and/or fraudulent transfers are listed on the Debtor's Schedules (Dkt. No. 80), which are attested to by David Pitman, as Secretary of Pitman Farms, under penalty of perjury; the remainder of the payments ARKK seeks to avoid were discovered upon review of the Debtor's documents.

### Debtor's Transfers

4.      According to the Debtor's Schedules (Dkt No. 80), during the one-year period prior to the Petition Date, that is, between March 6, 2019 and March 6, 2020 (the "Insider Preference Period"), the Debtor made the following payments to Pitman Farms on account of health, dental, or vision insurance and other health care expenses purportedly for Debtor's employees ("Health Care Payments"):

| Vendor Name | Document Date | Document Number | Document Amount | Dates of Service | Payment Date | Payment Document |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 2/28/2019 | 675095 | $1,534.06 | February 2019 | 3/22/2019 | 10164 |
| PITMAN FARMS INC | 3/31/2019 | 681959 | $66,039.91 | March 2019 | 4/26/2019 | 10405 |
| PITMAN FARMS INC | 3/31/2019 | 681963 | $68,173.04 | March 2019 bills | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 4/30/2019 | 688148 | $114,003.76 | April 2019 | 5/31/2019 | 10802 |
| PITMAN FARMS INC | 6/30/2019 | 697364 | $72,802.74 | June 2019 | 7/31/2019 | 11620 |
| **Total Health Care Payments** | | | $322,553.51 | | | |

5.      On information and belief, Pitman Farms is not a health insurance provider providing insurance to Debtor, nor is it a health care provider or third-party administrator for a health care provider that provided health care services to Debtor.

6.      After a review of information reasonably available to ARKK, ARKK can find no contemporaneous basis for Debtor to make the Health Care Payments to Pitman Farms purportedly for health insurance and healthcare bills during 2019.

7.      ARKK has been unable to locate any contractual basis setting forth Debtor's alleged obligations to Pitman Farms for health insurance or health care services.

8.      According to the Debtor's Schedules (Dkt. No. 80), during the Insider Preference Period, the Debtor made the following payments to Pitman Farms on account of amounts paid or refunded to Debtor that were purportedly owed to Pitman Farms ("Customer Payments"):

| Vendor Name | Document Date | Document Number | Document Amount | Dates of Service | Payment Date | Payment Document |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 3/18/2019 | CREDT00 000081 | $43,454.33 | Winco paid Simply and PF invoices on same check #117996 and PF asserted this portion belonged to PF | 3/22/2019 | 10164 |
| PITMAN FARMS INC | 3/11/2019 | 655143 | $5,718.66 | Winco paid Simply and PF invoices on same check #114747 and PF asserted this portion belonged to PF | 3/15/2019 | 10066 |
| PITMAN FARMS INC | 3/22/2019 | 672731 | $22,240.99 | Winco paid Simply and PF invoices on same check #119349 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |
| PITMAN FARMS INC | 3/26/2019 | 673001 | $15,917.69 | Winco paid Simply and PF invoices on same check #120378 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |
| PITMAN FARMS INC | 3/26/2019 | 673077 | $9,966.46 | Winco paid Simply and PF invoices on same check #120378 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 3/26/2019 | 673495 | $10,421.82 | Winco paid Simply and PF invoices on same check #120378 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |
| PITMAN FARMS INC | 3/26/2019 | 673510 | $23,602.58 | Winco paid Simply and PF invoices on same check #120378 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |
| PITMAN FARMS INC | 3/26/2019 | 673897 | $4,401.35 | Winco paid Simply and PF invoices on same check #120378 and PF asserted this portion belonged to PF | 3/29/2019 | 10199 |
| PITMAN FARMS INC | 4/9/2019 | 676526 | $13,060.22 | Winco paid Simply and PF invoices on same check #124777 and PF asserted this portion belonged to PF | 4/26/2019 | 10405 |
| PITMAN FARMS INC | 4/16/2019 | 676884 | $19,937.85 | Winco paid Simply and PF invoices on same check and PF asserted this portion belonged to PF | 4/26/2019 | 10405 |
| PITMAN FARMS INC | 5/6/2019 | CK30079 | $71,994.85 | Customer payment Check #30079 that PF asserted belongs to PF | 5/9/2019 | 10574 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 6/17/2019 | 061719 PROLIANT | $7,263.20 | Proliant Refund that PF asserted belongs to PF | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 6/24/2019 | 06242019 PROLIANT | $3,299.40 | Proliant Refund that PF asserted belongs to PF | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 7/2/2019 | 07022019 PROLIANT | $4,340.40 | Proliant Refund that PF asserted belongs to PF | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 7/8/2019 | 691628 | $17,304.76 | Winco paid Simply and PF invoices on same check #152674 and PF asserted this portion belonged to PF | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 7/8/2019 | 691958, 692055 | $15,246.46 | Winco paid Simply and PF invoices on same check #153180 and PF asserted this portion belonged to PF | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 6/10/2019 | 682758, 684768 | $77,933.17 | E&S Marketing paid Simply for invoices PF claims are PF invoices. | 7/3/2019 | 11327 |
| PITMAN FARMS INC | 7/1/2019 | CK77493 | $13,143.54 | Customer payment PF asserted belongs to PF | 7/3/2019 | 11327 |
| PITMAN FARMS INC | 7/3/2019 | CK151868 | $12,165.14 | Customer payment PF asserted belongs to PF | 7/3/2019 | 11327 |
| **Total Customer Payments** | | | $391,412.87 | | | |

9.      ARKK has conducted an analysis of readily available information of the Debtor. The Customer Payments were irregular payments to Pitman Farms that were made after Debtor received payment from various entities via instruments made payable to Debtor.

10.     ARKK has conducted an analysis of readily available information of the Debtor and has identified the following Insider Preference Period Payments to Pitman Farms during the Insider Preference Period that were not identified on Debtor's Schedules (Dkt. No. 80) ("Unidentified Preference Period Payments"):

| Transferee | Transaction Date | Transfer Amount |
|---|---:|---|
| PF | 5/23/2019 | $200,000.00 |
| PITMAN FARMS | 7/2/2019 | $25,000.00 |
| PITMAN FARMS | 7/8/2019 | $15,000.00 |
| Pitman Farms | 9/26/2019 | $3,085.17 |
| Pitman Farms | 9/12/2019 | $125,000.00 |
| Pitman Farms | 10/28/2019 | $22,995.51 |
| **Total Unidentified Preference Period Payments** | | $391,080.68 |

11.     ARKK has conducted an analysis of readily available information of the Debtor and ARKK has been unable to find justification for the Unidentified Preference Period Payments.

12.     According to the Debtor's Schedules (Dkt. No. 80), during the Insider Preference Period, the Debtor made the following Insider Preference Period Payments to Pitman Farms on account of Cornish game hens, processed chicken, and/or duck purchased from Pitman Farms ("Processed Meat Payments"):

| Vendor Name | Document Date | Document Number | Document Amount | Dates of Service | Payment Date | Payment Document |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 4/4/2019 | 678615 | $4,515.14 | Cornish Game Hens shipped 04/4/19 | 4/26/2019 | 10405 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PITMAN FARMS INC | 4/9/2019 | 679458 | $9,659.06 | processed chicken shipped 04/09/19 | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 4/13/2019 | 680385 | $1,389.60 | processed chicken shipped 04/13/19 | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 4/16/2019 | 680723 | $132.00 | processed chicken shipped 04/16/19 | 4/26/2019 | 10408 |
| PITMAN FARMS INC | 6/1/2019 | 675212 | $2,583.09 | processed chicken shipped 03/16/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 681216 | $7,817.60 | processed chicken shipped 04/18/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 681993 | $630.40 | processed chicken shipped 04/23/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 684535 | $300.00 | processed chicken shipped 05/17/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 686633 | $3,614.85 | processed chicken shipped 05/18/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 687618 | $2,379.84 | processed chicken shipped 05/24/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/1/2019 | 688323 | $13,824.00 | processed chicken shipped 06/06/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 6/6/2019 | 689908 | $1,286.40 | processed chicken | 7/31/2019 | 11620 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | shipped 05/28/19 | | |
| PITMAN FARMS INC | 6/27/2019 | 693776 | $578.88 | processed chicken shipped 06/27/19 | 7/31/2019 | 11620 |
| PITMAN FARMS INC | 7/16/2019 | 697095 | $1,645.42 | processed duck shipped 07/16/19 | 7/31/2019 | 11620 |
| **Total Processed Meat Payments** | | | $50,356.28 | | | |

13.   Debtor made the Processed Meat Payments to Pitman Farms at irregular intervals and at least ten days after being invoiced for the product purportedly provided.

14.   The Health Care Payments, Customer Payments, Unidentified Preference Period Payments, and Processed Meat Payments will collectively be referred to as the "Payments".

**Avoidance of the Payments as Preference Payments**

15.   ARKK has conducted an analysis of readily available information of the Debtor and is seeking to avoid the $1,155,403.34 in transfers of the Debtor's property made by the Debtor to Pitman Farms within the Insider Preference Period.

16.   The purpose of Bankruptcy Code section 547 is to prevent favoritism among creditors who should stand on equal footing. *Sigmon v. Royal Cake Co. (In re Cybermech, Inc.),* 13 F.3d 818 (4th Cir. 1994).

17.   Here, Simply Essentials favored the claims of Pitman Farms, its sole member, by paying amounts due to Pitman Farms in full in the year prior to the petition date and while the Debtor was deeply insolvent.

18.   Pitman Farms received far more on account of these payments than it would if it were treated like all other estate creditors, who must await distributions, share ratably in the

9

remaining estate property, and face significant reductions in the amounts owed to them by the Debtor.

19.     For refunds of amounts already paid by Pitman Farms, or paid by customers to Debtor, there was no contemporaneous exchange of value given to the Debtor.

20.     The purported debt is not "ordinary course" as it was not incurred in a typical, arms-length commercial transaction that occurred in the marketplace, but was an insider arrangement between a parent and its 100% owned and controlled subsidiary.

21.     Payments were further not in the ordinary course because, Simply Essentials, when it was insolvent, and under the 100% control of Pitman Farms, prioritized payments to Pitman Farms while leaving other creditors' claims unpaid.

22.     Accordingly, this action is commenced pursuant to sections 547 and 550 of the Bankruptcy Code to avoid and recover from Pitman Farms, or from any other person or entity for whose benefit the transfers were made, preferential transfers made by Simply Essentials to Pitman Farms, as an insider, that occurred during the one-year period prior to the filing of the involuntary petition on March 6, 2020.

<u>**Avoidance of Payments as Fraudulent Transfers**</u>

23.     The purpose of section 548 "is to avoid fraud and self-dealing by a debtor at the expense of the estate's creditors." *In re Feiler*, 218 F.3d 948, 955 (9th Cir. 2000).

24.     The basis upon which the Payments were made are not evidenced by any written agreement prior to the payments to Pitman Farms.

25.     Instead, they are based upon Pitman Farms deciding certain portions of payments or refunds given to Debtor were owed to Pitman Farms, that Debtor owed Pitman Farms for

healthcare and insurance expenses, and that Debtor would pay various amounts to Pitman Farms

for unspecified reasons.

26.      Simply Essentials did not receive reasonably equivalent value for the payments it

made to Pitman Farms described therein.

27.      Moreover, the payments were made with the actual intent to  hinder, delay, and

defraud Simply Essentials' creditors as (i) Pitman Farms caused Simply Essentials to prioritize

paying Pitman Farms' claims while other estate creditors went unpaid, (ii) the payments had no

corresponding benefit to the estate, and (iii) Simply Essentials was deeply insolvent when the

payments were made.

28.      Accordingly, this action is commenced pursuant to sections 544, 548, 550, and 551

of the Bankruptcy Code and chapter 684 of the Iowa Code to avoid and recover from Pitman

Farms, or from any other person or entity for whose benefit the transfers were made, fraudulent

and voidable transfers made by Simply Essentials to Pitman Farms on the basis of the purported

payments as set forth herein.

## Disallowance of Claims

29.      In addition, ARKK seeks to disallow, pursuant to section 502(d) of the Bankruptcy

Code, any claim that Pitman Farms has filed or asserted against the Debtor or that has been

scheduled for Pitman Farms, unless Pitman Farms has paid to ARKK any amounts for which it is

liable under sections 544, 547, 548, and 550 of the Bankruptcy Code, and chapter 684 of the Iowa

Code.

**JURISDICTION AND VENUE**

30.     This Court has subject matter jurisdiction over this adversary proceeding arising under the Bankruptcy Code and related to the above-captioned bankruptcy case (the "Bankruptcy Case") pending before the United States Bankruptcy Court for the Northern District of Iowa (the "Court"), pursuant to 28 U.S.C. §§ 157 and 1334.

31.     The causes of action set forth herein concern the determination, allowance and amount of claims pursuant to 11 U.S.C. §§ 502, 544, 547, 548, 550 and 551 and, as such, constitute a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

32.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

33.     The statutory and legal predicates for the relief sought herein are sections 502, 544, 547, 548, 550, and 551 of the Bankruptcy Code, chapter 684 of the Iowa Code, and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

34.     ARKK consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**THE PARTIES**

35.     Plaintiff ARKK is a corporation organized under the laws of Michigan. ARKK is a creditor of the Debtor, with an allowed claim of $2.5 million, and party in interest to the Bankruptcy Case.

36.      The right to bring the actions in this Complaint was assigned to ARKK by the Trustee (Dkt. No. 256-1) and approved by the Court (Dkt. No. 314).

37.     ARKK has standing to investigate, prosecute, and resolve any and all causes of action falling within the Pitman Causes of Action, including the instant Complaint.

38.     Defendant Pitman Farms is a corporation organized under the laws of California.

39.     Pitman Farms does business under a number of trade names, including, but not limited to, Pitman Farms, Inc.; Pitman Farms – CA; and Pitman Farms – Utah. These trade names will be collectively referred to, with Pitman Farms, as "Pitman Farms" in the instant Complaint.

40.     Pitman Farms was the sole member and manager of the Debtor, holding 100% equity of its interests, since November 13, 2017. *See* Schedules A/B, D, E/F, G, H. (Dkt. No. 80) (the "Debtor's Schedules") at 45.

41.     Pitman Farms is an "insider" as defined in 11 U.S.C. § 101(31).

42.     Pitman Farms is an "insider" as defined in Iowa Code § 684.1.

43.     Pitman Farms alleges it is a creditor of the Debtor.

## BACKGROUND FACTS

44.     On November 13, 2017, Pitman Farms entered into the Equity Purchase Agreement to purchase the Debtor (the "Pitman Purchase") and became its 100% owner and sole member.

## Simply Essentials' Insolvency.

45.     Simply Essentials was insolvent by at least the fourth quarter of 2017.

46.     Under Iowa Code 684.2(1), "[a] debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."

47.     Under Iowa Code 684.2(2), "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent.

The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence."

48.     For the twelve months ending December 31, 2016, and prior to Pitman Farms' acquisition of Simply Essentials, the Debtor's balance sheet listed total assets of $55,786,130.00 against liabilities of $9,683,228, making the total value of the members' equity $46,102,902. *See* Exhibit 1.

49.     However, the Debtor's quarterly balance sheet as of March 31, 2018 shows only $50,861,996 in total assets against $84,789,139 in total liabilities for a total equity value of negative-$33,927,143. *See* Exhibit 2.

50.     Given the dramatic and deep decline into insolvency reflected in the March 31, 2018 balance sheet, the Debtor was insolvent by at least the fourth quarter of 2017.

51.     The Debtor's quarterly balance sheet as of June 30, 2018 shows $48,220,581 in total assets against $96,021,755 in total liabilities for a total equity value of negative-$47,801,174. *See* Exhibit 3.

52.     The Debtor's annual balance sheet as of September 30, 2018 shows $44,611,785 in total assets against liabilities of $109,237,754 for a total equity value of negative-$64,625,969. *See* Exhibit 4.

53.     The Debtor's quarterly balance sheet as of December 31, 2018 shows $45,969,783 in assets against liabilities of $122,346,195 for a total equity value of negative-$76,376,411. *See* Exhibit 5.

54.     By late 2018, Simply Essentials began to contemplate filing for bankruptcy protection. *See* Exhibit 6, 341 Hr'g Tr. 56:8-10 ("[Filing for protection under the Bankruptcy

Code] was looked at in late '18 , early '19…[a]nd then in May of 2019 is when it really was contemplated and looked at.").

55.     The Debtor's quarterly balance sheet as of March 31, 2019 shows $50,234,525 in assets against liabilities of $139,992,604 for a total equity value of negative-$89,758,079. *See* Exhibit 7.

56.     The Debtor's quarterly balance sheet as of June 30, 2019 shows $48,127,288 in assets against liabilities of $150,269,161 for a total equity value of negative-$102,141,872. *See* Exhibit 8.

57.     The Debtor's annual balance sheet as of September 30, 2019 shows $32,651,989 in total assets against liabilities of $145,500,667 for a total equity value of -$112,848,680. *See* Exhibit 9.

58.     The Debtor's quarterly balance sheet as of December 31, 2019 shows $32,982,007 in assets against liabilities of $146,834,248 for a total equity value of negative-$113,852,241. *See* Exhibit 10.

59.     By June 7, 2019, Pitman Farms leadership was consulting with bankruptcy counsel in order to plan Pitman Farms' exit plan from Simply Essentials including, among other things, preparing for a Chapter 11 bankruptcy. *See* Exhibit 11.

60.     Rather than pay debts as they came due, Simply Essentials, under the full control of Pitman Farms, actively "strung along" creditors to extend preference windows in its contemplated bankruptcy. *See* Exhibit 12 ("My marching orders were to extend the arbitration proceeding [with ARKK] until the end of 2019 (I think to get past certain preference periods) then continue to string it out until a decision was made about bankruptcy, which we were, for better or

worse, able to accomplish."); Exhibit 13 (Simply Essential's counsel asking whether he should settle a claim or "simply string [the creditor] along until bankruptcy is filed, then have him make a claim like anyone else.").  Simply Essentials, therefore, under the control of Pitman Farms, acted with the intent to hinder, delay, and defraud creditors.

61.    By late May 2019, Pitman Farms and David Pitman had determined to shutter the Debtor's operations.  *See* Exhibit 6, 341 Hr'g Tr. 8:1-4 (decision to cease operations made "[a]round the beginning of June, end of May, in 2019").

62.    In August 2019, the Debtor halted all operations and began shutting down its Plant.

63.    On or about March 6, 2020 (the "Petition Date"), certain creditors filed an involuntary bankruptcy petition against the Debtor. (Dkt. No. 1). A signed order for relief pursuant to the involuntary chapter 7 petition was entered on September 22, 2020. (Dkt. No. 73).

**The Payments Are Avoidable Under Multiple Provisions of the Bankruptcy Code**

64.    The Payments all occurred during the Insider Preference Period.

65.    The Payments also occurred between March 6, 2018 and March 6, 2020 (the "Fraudulent Transfer Period"), as well as occurred between December 27, 2017 and March 6, 2020 (the "Iowa UVTA Transfer Period").

66.    ARKK has performed its own due diligence and evaluation of the reasonably known affirmative defenses available to Pitman Farms.

67.    After conducting its due diligence and taking into account reasonably knowable affirmative defenses, ARKK has determined that ARKK may avoid the Payments.

68.    No contemporaneous exchange of new value was given to the Debtor on account of the Payments.

69. The Payments were not made according to ordinary business terms.

70. Simply Essentials had no independent board members, and no assessment was ever performed to ensure the terms of any purported loan from Pitman Farms were fair.

71. The Payments were not made in the ordinary course of business as there was no pre-existing loan documentation supporting such loans.

72. Simply Essentials prioritized the Payments to Pitman Farms while other creditors' claims were unpaid.

73. During the course of this adversary proceeding, ARKK may learn (through discovery or otherwise), of additional transfers made by the Debtor to Pitman Farms during the Insider Preference Period, the Fraudulent Transfer Prior, and/or the Iowa UVTA Transfer Period. It is ARKK's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Pitman Farms or any other transferee. ARKK reserves the right to amend this original Complaint to include: (i) further information regarding the Interest Payments, (ii) additional transfers, (iii) modifications of and/or revisions to the Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by this Court's order dated April 5, 2022 (Docket # 314), if applicable (collectively, the "Amendments"), that may become known to ARKK at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF[1]

### COUNT I
### (Avoidance of Preferential Transfers – 11 U.S.C. § 547)

74.   ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

75.   Pitman Farms, as sole member and manager of the Debtor, is an "insider" of the Debtor as defined in 11 U.S.C. § 101(31).

76.   Simply Essentials paid Pitman Farms at least $1,155,403.34 in preferential transfers, referred to herein as the Payments.

77.   The Payments occurred within the Insider Preference Period.

78.   The Payments were made to or for the benefit of Pitman Farms.

79.   The Payments constitute "transfers" within the meaning of section 547 of the Bankruptcy Code.

80.   Each Payment was made while the Debtor was insolvent.

81.   As a result of each Payment, Pitman Farms received more than it would (i) under Simply Essentials' chapter 7 case; (ii) if the Payment had not been made; and (iii) if Pitman Farms received payment of its debts under the provisions of the Bankruptcy Code like other estate creditors. Simply Essentials' liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Estate.

---

[1] ARKK reserves the right to bring additional fraudulent transfer claims for transfers not set forth herein as well as the right to bring additional preferential transfer claims for transfers not set forth herein.

82.     Pitman Farms was the initial transferee of the Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Payments were made.

83.     Accordingly, ARKK, as representative of the Estate, is entitled to an order and judgment against Pitman Farms avoiding each Payment pursuant to section 547 of the Bankruptcy Code.

## COUNT II
### (Recovery of Avoided Preferential Transfers – U.S.C. § 550)

84.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

85.     ARKK is entitled to avoid the above-described Payments pursuant to section 547(b) of the Bankruptcy Code.

86.     Pitman Farms was the initial transferee of the Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Payments were made.

87.     Pursuant to section 550(a) of the Bankruptcy Code, ARKK is entitled to recover from Pitman Farms all Payments, plus interest thereon to the date of payment and the costs of this action.

## COUNT III
### (Avoidance and Recovery of Actual Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(A))

88.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

89.     The Payments occurred within two years of the Petition Date.

90.     The Payments constitute "transfers" within the meaning of sections 548, 550, and 551 of the Bankruptcy Code.

91.    Pitman Farms, as sole owner and manager, had access to the Debtor's financial information and knew or should have known of the Debtor's insolvency.

92.    The Payments were made with the actual intent to hinder, delay, or defraud Simply Essentials' other creditors by prioritizing payments to Pitman Farms in full while other creditors went unpaid.

93.    While paying Pitman Farms in full, Simply Essentials intentionally "strung along" other creditors of Simply Essentials to delay their enforcement remedies to cause them to become unsecured creditors in the bankruptcy case. *See* Exhibits 12, 13.

94.    The Debtor's estate was damaged by the transfer of the Payments for less than or no equivalent value.

95.    Pursuant to section 550(a) of the Bankruptcy Code, ARKK is entitled to recover from Pitman Farms all Payments, plus interest thereon to the date of payment and the costs of this action.

96.    Accordingly, the Court should avoid the Payments as actual fraudulent transfers, and recover the value of such transfers from Pitman Farms, or any other immediate or mediate transferee of the Payments, pursuant to 11 U.S.C. §§ 548, 550, and 551.

## COUNT IV
### (Avoidance and Recovery of Constructive Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(B))

97.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

98.    When Simply Essentials made the Payments, it did not receive reasonably equivalent value for the Payments.

99.    The Payments were transfers made within the two years preceding the filing of the involuntary petition on March 6, 2020.

100.     At the time of each Payment, Debtor's liabilities exceeded its assets.

101.      At the time of each Payment, Debtor was "insolvent" as that term is used in 11 U.S.C. § 548(a)(1)(B).

102.     Pursuant to section 550(a) of the Bankruptcy Code, ARKK is entitled to recover from Pitman Farms all Payments, plus interest thereon to the date of payment and the costs of this action.

103.     Accordingly, the Court should avoid the Payments as constructive fraudulent transfers, and recover the value of such transfers from Pitman Farms, or any other immediate or mediate transferee of the Payments, pursuant to 11 U.S.C. §§ 548, 550, and 551.

**COUNT V**
**(Avoidance and Recovery of Actual and Constructive Fraudulent Transfers - 11 U.S.C § 544, 550, 551, and Iowa Code Chapter 684)**

104.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

105.     By operation of 11 U.S.C. §544, the Trustee is entitled to utilize any applicable non-bankruptcy law to seek avoidance of any transfer.

106.     The State of Iowa has adopted the Iowa Voidable Transactions Act. Iowa Code § 684.15.

107.      At the time the Payments were made to Pitman Farms, ARKK was a creditor of Simply Essentials.

108.     The Payments constitute "transfers" within the meaning of Iowa Code § 684.

109.     Simply Essentials made Payments to Pitman Farms with the actual intent to hinder, delay, and defraud creditors, including ARKK.

110.    Because the Payments were made with actual intent to hinder, delay or defraud any creditor of Simply Essentials, the Payments were made in violation of Iowa Code § 684.4(1)(a).

111.    Pitman Farms was the sole member and manager of Simply Essentials at the time the Payments were made.

112.    Pitman Farms was an insider of Simply Essentials under Iowa Code § 684.1(8).

113.    The Debtor, under the control of Pitman Farms, caused the Payments to be made.

114.    At all relevant times, and as of the Petition Date, there existed actual unsecured creditors of the Debtor who could have avoided any transfer of an interest of the Debtor in property that is avoidable under the Iowa Code pursuant to 11 U.S.C. § 544(b).

115.    ARKK is an unsecured creditor of the Debtor, holding an allowed unsecured claim in the amount of $2.5 million, who could avoid the Payments under nonbankruptcy law.

116.    Simply Essentials did not receive reasonably equivalent value in exchange for the Payments.

117.    Pitman Farms' actions and scheme described herein constituted a willful and wanton disregard for the rights of ARKK and other creditors of Simply Essentials.

118.    Pitman Farms acted with malice in its intentional disregard for the rights of ARKK and other creditors.

119.    ARKK is entitled to judgment against Pitman Farms in the amount of the Payments pursuant to Iowa Code §§ 684.7 and 684.8(2)(a)(1).

120.    Accordingly, the Court should avoid the Payments as actual and constructive fraudulent transfers, and enter judgment against Pitman Farms to recover the value of such

transfers from Pitman Farms, or any other immediate or mediate transferee of the Payments, pursuant to 11 U.S.C. §§ 544, 550, 551 and Iowa Code §§ 684.4, 684.5, and 684.7.

**COUNT VI**
**(Disallowance of Claims – 11 U.S.C. § 502(d) and (j))**

121.    ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

122.    Pitman Farms is a transferee of the Payments, which are avoidable pursuant to sections 544, 547, and 548 of the Bankruptcy Code and chapter 684 of the Iowa Code, and which are recoverable from Pitman Farms under section 550 of the Bankruptcy Code.

123.    Pitman Farms has not paid the amount of the Payments or turned over such property for which Pitman Farms is liable under section 550 of the Bankruptcy Code.

124.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Pitman Farms against the Debtor must be disallowed until such time as Pitman Farms pays ARKK the amount equal to the aggregate amount of all of the Payments, plus interest thereon and costs.

125.    Pursuant to 11 U.S.C. § 502(j), any and all Claims of Pitman Farms, and/or its assignee, against Debtor's estate or ARKK previously allowed by Debtor or ARKK, must be reconsidered and disallowed until such time as Pitman Farms pays to ARKK an amount equal to the aggregate amount of the Payments.

**RELIEF REQUESTED**

**WHEREFORE,** ARKK respectfully requests that this Court enter an order providing the following relief against Pitman Farms:

A.    On Count I, judgment in favor of ARKK and against Pitman Farms in the amount of $1,155,403.34 and avoiding the Payments;

23

B.      On Count II, judgment in favor of ARKK and against Pitman Farms, directing Pitman Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

C.      On Count III, judgment in favor of ARKK and against Pitman Farms, avoiding the Payments, and directing Pitman Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

D.      On Count IV, judgment in favor of ARKK and against Pitman Farms, avoiding the Payments, and directing Pitman Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

E.      On Count V, judgment in favor of ARKK and against Pitman Farms, avoiding the Payments, and directing Pitman Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, plus punitive damages in an amount to be determined at trial, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

F.      On Count VI, judgment in favor of ARKK and against Pitman Farms, disallowing any claims filed by Pitman Farms or scheduled in its favor in the Debtor's chapter 7 case until Pitman Farms returns the Payments to ARKK pursuant to 11 U.S.C. §§ 502(d) and (j); and

G.     Such other relief as the Court may deem just and proper.

Dated: February 7, 2023                 Respectfully submitted,


                                        /s/ Kristina M. Stanger
                                        Kristina M. Stanger, ID # AT0000255
                                        Leslie C. Behaunek, ID # AT0011563
                                        NYEMASTER, GOODE, P.C.
                                        700 Walnut Street, Suite 1600
                                        Des Moines, Iowa  50309-3899
                                        Tel:  (515) 283-3100
                                        Fax: (515) 283-3100
                                        kms@nyemaster.com
                                        lcbehaunek@nyemaster.com

                                        AND

                                        /s/ Todd J. Ohlms
                                        Todd J. Ohlms*
                                        PROSKAUER ROSE LLP
                                        West Madison, Suite 3800
                                        Chicago, IL 60602
                                        Tel: 312-962-3537
                                        tohlms@proskauer.com

                                            -and-

                                        /s/ Daniel S. Desatnik
                                        Daniel S. Desatnik*
                                        PROSKAUER ROSE LLP
                                        Eleven Times Square
                                        New York, NY 10036
                                        Tel: 212-969-3000
                                        ddesatnik@proskauer.com

                                        ATTORNEYS FOR ARKK FOOD COMPANY
                                        *Pro Hac Vice

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this February 7, 2023, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

/s/ *Meagan Breckenridge*