**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 7 |
| Simply Essentials, LLC, | Case No. 20-00305 |
| Debtor. | |
| ARKK FOOD COMPANY, | |
| Plaintiff, | |
| v. | |
| PITMAN FAMILY FARMS, | Adversary No. 23-_____ |
| Defendant. | |

**COMPLAINT TO AVOID TRANSFERS PURSUANT TO**
**11 U.S.C. §§ 544, 547, AND 548 AND IOWA CODE § 684, AND TO RECOVER**
**PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. §§ 550 AND 551**

ARKK Food Company ("ARKK"), as representative of the Estate, as assignee of the "Pitman Causes of Action" as defined at (Dkt. No. 256-1), files this complaint (the "Complaint") to avoid preferential and fraudulent transfers to and recover transferred property from Pitman Family Farms (the "Defendant" or "Pitman Family Farms") pursuant to sections 544, 547, 548, 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code") and chapter 684 of the Iowa Code. In support of this Complaint, ARKK hereby alleges upon information and belief as follows:

## **NATURE OF THE CASE**

1.      Through this action, ARKK seeks to avoid, as preferential and/or fraudulent transfers the amount of $129,381.30 in payments made by Simply Essentials (the "Debtor") to Pitman Family Farms, an "insider," in the one-year period prior to the filing of the involuntary petition on March 6, 2020 (Dkt. No. 1.), the two-year fraudulent transfer lookback window, and the 5-year lookback window under Iowa Code Chapter 684.

2.      These payments were made to Pitman Family Farms purportedly for payment of invoices for sales of baby chicks. Pitman Family Farms purportedly sold baby chicks to Simply Essentials, but the exchange of baby chicks for payment was not a contemporaneous exchange of new value because the payments occurred irregularly and were not made within three days.

3.      Debtor made the payments for baby chic;l;l;lks to Pitman Farms at irregular intervals and several days to several weeks after being invoiced for the product purportedly provided.

## **Avoidance of Preferential Payments**

4.      The $102,831.30 in payments ARKK seeks to avoid as preference payments are listed on the Debtor's Schedules (Dkt. No. 80) (the "Debtor's Schedules"), which are attested to by David Pitman, as Secretary of Pitman Farms, under penalty of perjury.

5.      The purpose of Bankruptcy Code section 547 is to prevent favoritism among creditors who should stand on equal footing. *Sigmon v. Royal Cake Co. (In re Cybermech, Inc.),* 13 F.3d 818 (4th Cir. 1994).

6.      Here, Simply Essentials favored the claims of Pitman Family Farms, an insider, by making numerous payments Pitman Family Farms, purportedly for the purchase of baby chicks, in the year prior to the petition date and while the Debtor was deeply insolvent.

7.      Pitman Family Farms received far more on account of these payments than it would if it were treated like all other estate creditors, who must await distributions, share ratably in the remaining estate property, and face significant reductions in the amounts owed to them by the Debtor.

8.      There was no contemporaneous exchange of value given to the Debtor. As Debtor's schedules show, some payments to Pitman Family Farms occurred within days of the purchase, and other payments took several weeks. The exchange of the baby chicks for payment was not contemporaneous because any payment outside of three days is not a contemporaneous exchange.

9.      Payments were not in the ordinary course because Simply Essentials, when it was insolvent, prioritized payments to insider Pitman Family Farms while leaving other creditors' claims unpaid.

10.      Payments were also not in the ordinary course because Simply Essentials paid Pitman Family Farms with no regularity for the purchase of these baby chicks. As Debtor's schedules show, some payments to Pitman Family Farms occurred within days of the purchase, and other payments took several weeks.

**Avoidance of Payments as Fraudulent Transfers**

11.      ARKK seeks to avoid a total of $129,381.30 in payments to Pitman Family Farms as actual intent and constructive fraudulent transfers.

12.      The purpose of section 548 "is to avoid fraud and self-dealing by a debtor at the expense of the estate's creditors." *In re Feiler*, 218 F.3d 948, 955 (9th Cir. 2000).

13.      The payments were made with the actual intent to  hinder, delay, and defraud Simply Essentials' creditors as (i) Pitman Farms—beneficially owned and controlled by the same individuals that beneficially owned and controlled Pitman Family Farms—caused Simply

3

Essentials to prioritize paying Pitman Family Farms for baby chicks while estate creditors went unpaid, (ii) the baby chicks had little to no corresponding benefit to the estate, and (iii) Simply Essentials was deeply insolvent when the payments were made.

14.     Upon information and belief, Simply Essentials did not receive reasonably equivalent value for the payments made to Pitman Family Farms described herein.

15.     Accordingly, this action is commenced pursuant to sections 547 and 550 of the Bankruptcy Code to avoid and recover from Pitman Family Farms, or from any other person or entity for whose benefit the transfers were made, preferential transfers made by Simply Essentials to Pitman Family Farms, as an insider, that occurred during the one-year period prior to the filing of the involuntary petition on March 6, 2020.

16.     Additionally, this action is commenced pursuant sections 544, 548, 550, and 551 of the Bankruptcy Code and chapter 684 of the Iowa Code to avoid and recover from Pitman Family Farms, or from any other person or entity for whose benefit the transfers were made, fraudulent and voidable transfers made by Simply Essentials to Pitman Family Farms.

## <u>JURISDICTION AND VENUE</u>

17.     This Court has subject matter jurisdiction over this adversary proceeding arising under the Bankruptcy Code and related to the above-captioned bankruptcy case (the "<u>Bankruptcy Case</u>") pending before the United States Bankruptcy Court for the Northern District of Iowa (the "<u>Court</u>"), pursuant to 28 U.S.C. §§ 157 and 1334.

18.     The causes of action set forth herein concern the avoidance and recovery of transfers pursuant to 11 U.S.C. §§ 544, 547, 548, 550, and 551, and Iowa Code Chapter 684, and, as such, constitute a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

20.     The statutory and legal predicates for the relief sought herein are sections 544, 547,

548, 550, and 551 of the Bankruptcy Code, chapter 684 of the Iowa Code, and Rules 3007 and

7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

21.     ARKK consents to the entry of final orders or judgments by the Court if it is

determined that the Court, absent consent of the parties, cannot enter final orders or judgments

consistent with Article III of the United States Constitution.

## THE PARTIES

22.     Plaintiff ARKK is a corporation organized under the laws of Michigan. ARKK is a

creditor of the Debtor, with an allowed claim of $2.5 million, and party in interest to the

Bankruptcy Case.

23.      The right to bring the actions in this Complaint was assigned to ARKK by the

Trustee (Dkt. No. 256-1) and approved by the Court (Dkt. No. 314).

24.     ARKK has standing to investigate, prosecute, and resolve any and all causes of

action falling within the Pitman Causes of Action, including the instant Complaint.

25.     Defendant Pitman Family Farms is a corporation organized under the laws of

California formed on or around May 5, 1989.

26.     Pitman Family Farms is owned by the Richard J. Pitman Trust, dated October 27,

1989 (50%) and the  David Pitman Irrevocable Trust, dated September 25, 2009.

27.     Richard Pitman is the registered agent for Pitman Family Farms as well as for

Simply Essentials, and he is the registered agent and a beneficial owner of Pitman Farms.

28.     Upon information and belief, Pitman Farms and Pitman Family Farms were, at all relevant times, controlled by the same individuals, including, but not limited to Richard Pitman and David Pitman.

29.     Pitman Farms was the sole member and manager of the Debtor, holding 100% equity of its interests, since November 13, 2017. *See* Debtor's Schedules A/B, D, E/F, G, H at 45.

30.     Pitman Family Farms is an "insider," "affiliate," or "insider of an affiliate" as defined in 11 U.S.C. § 101(31)(B), (E).

31.     Pitman Family Farms is an "insider," "affiliate," or "insider of an affiliate" as defined in Iowa Code § 684.1.

## BACKGROUND FACTS

32.     On November 13, 2017, Pitman Farms  entered into the Equity Purchase Agreement to purchase the Debtor (the "Pitman Purchase") and became its 100% owner and sole member.

33.     Upon information and belief, Pitman Farms and Pitman Family Farms were, at all relevant times, controlled by the same individuals, including, but not limited to Richard Pitman and David Pitman.

### Simply Essentials' Insolvency

34.     Simply Essentials was insolvent by at least the fourth quarter of 2017.

35.     Under Iowa Code 684.2(1), "[a] debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."

36.     Under Iowa Code 684.2(2), "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence."

6

37.     For the twelve months ending December 31, 2016, and prior to Pitman Farms'

acquisition of Simply Essentials, the Debtor's balance sheet listed total assets of $55,786,130.00

against liabilities of $9,683,228, making the total value of the members' equity $46,102,902. *See*

Exhibit 1.

38.     However, the Debtor's quarterly balance sheet as of March 31, 2018 shows only

$50,861,996 in total assets against $84,789,139 in total liabilities for a total equity value of

negative-$33,927,143. *See* Exhibit 2.

39.     Given the dramatic and deep decline into insolvency reflected in the March 31,

2018 balance sheet, the Debtor was insolvent by at least the fourth quarter of 2017.

40.     The Debtor's quarterly balance sheet as of June 30, 2018 shows $48,220,581 in

total assets against $96,021,755 in total liabilities for a total equity value of negative-$47,801,174.

*See* Exhibit 3.

41.     The Debtor's annual balance sheet as of September 30, 2018 shows $44,611,785 in

total assets against liabilities of $109,237,754 for a total equity value of negative-$64,625,969. *See*

Exhibit 4.

42.     The Debtor's quarterly balance sheet as of December 31, 2018 shows $45,969,783

in assets against liabilities of $122,346,195 for a total equity value of negative-$76,376,411. *See*

Exhibit 5.

43.     By late 2018, Simply Essentials began to contemplate filing for bankruptcy

protection.  *See* Exhibit 6, 341 Hr'g Tr. 56:8-10 ("[Filing for protection under the Bankruptcy

Code] was looked at in late '18 , early '19…[a]nd then in May of 2019 is when it really was

contemplated and looked at.").

44.     The Debtor's quarterly balance sheet as of March 31, 2019 shows $50,234,525 in assets against liabilities of $139,992,604 for a total equity value of negative-$89,758,079. *See* Exhibit 7.

45.     The Debtor's quarterly balance sheet as of June 30, 2019 shows $48,127,288 in assets against liabilities of $150,269,161 for a total equity value of negative-$102,141,872. *See* Exhibit 8.

46.     The Debtor's annual balance sheet as of September 30, 2019 shows $32,651,989 in total assets against liabilities of $145,500,667 for a total equity value of -$112,848,680. *See* Exhibit 9.

47.     The Debtor's quarterly balance sheet as of December 31, 2019 shows $32,982,007 in assets against liabilities of $146,834,248 for a total equity value of negative-$113,852,241. *See* Exhibit 10.

48.     By June 7, 2019, Pitman Farms leadership was consulting with bankruptcy counsel in order to plan Pitman Farms' exit plan from Simply Essentials including, among other things, preparing for a Chapter 11 bankruptcy. *See* Exhibit 11.

49.     Rather than pay debts as they came due, Simply Essentials, under the full control of Pitman Farms, actively "strung along" creditors to extend preference windows in its contemplated bankruptcy. *See* Exhibit 12 ("My marching orders were to extend the arbitration proceeding [with ARKK] until the end of 2019 (I think to get past certain preference periods) then continue to string it out until a decision was made about bankruptcy, which we were, for better or worse, able to accomplish."); Exhibit 13 (Simply Essentials' counsel asking whether he should settle a claim or "simply string [the creditor] along until bankruptcy is filed, then have him make

a claim like anyone else.").  Simply Essentials, therefore, under the control of Pitman Farms, acted

with the intent to hinder, delay, and defraud creditors.

50.     By late May 2019, Pitman Farms and David Pitman had determined to shutter the

Debtor's operations.  *See* Exhibit 6, 341 Hr'g Tr. 8:1-4 (decision to cease operations made

"[a]round the beginning of June, end of May, in 2019").

51.     In August 2019, the Debtor halted all operations and began shutting down its Plant.

52.     On or about March 6, 2020 (the "Petition Date"), certain creditors filed an

involuntary bankruptcy petition against the Debtor. A signed order for relief pursuant to the

involuntary chapter 7 petition was entered on September 22, 2020. (Dkt. No. 73).

## Debtor's Transfers

53.     According to the Debtor's Schedules (Dkt. No. 80), during the one-year period prior

to the Petition Date, that is, between March 6, 2019 and March 6, 2020 (the "Insider Preference

Period"), as well as within the two-year period prior to the Petition Date, that is, between March

6, 2018 and March 6, 2020 (the "Fraudulent Transfer Period") the Debtor made payments in the

amounts set forth  below to Pitman Family Farms for the purchase of baby chicks. The amounts

below highlighted in green do not constitute a contemporaneous exchange of new value because

more than three days passed between the date of service and date of payment. ARKK seeks

avoidance of these amounts as Preferential Transfers (the "Preferential Transfer Payments"). The

remaining amounts were paid within the three-day period to constitute contemporaneous exchange

of new value, but are nonetheless part of an overarching scheme to defraud creditors. Thus, ARKK

seeks avoidance of the payments made within three days of the dated invoice, collectively with the

Preferential Transfer Payments, as Fraudulent Transfers (all of the payments below will be referred

to collectively as the "Payments").

| Vendor Name | Document Type | Document Date | Document Number | Document Amount | Voided | Dates of Service |
|---|---|---|---|---|---|---|
| PITMAN FAMILY FARMS | Invoice | 3/5/2019 | CI10000166 | $4,140.00 | No | 3/5/2019 |
| **PITMAN FAMILY FARMS** | **Payment** | **3/8/2019** | **009992** | **($4,140.00)** | **No** | |
| PITMAN FAMILY FARMS | Invoice | 3/11/2019 | CI10000177 | $10,242.00 | No | 3/11/2019 |
| PITMAN FAMILY FARMS | Invoice | 3/18/2019 | CI10000188 | $8,190.00 | No | 3/18/2019 |
| **PITMAN FAMILY FARMS** | **Payment** | **3/22/2019** | **010163** | **($18,432.00)** | **No** | |
| PITMAN FAMILY FARMS | Invoice | 4/1/2019 | CI10000203 | $7,200.00 | No | 3/25/2019 |
| PITMAN FAMILY FARMS | Invoice | 4/1/2019 | CI10000207 | $6,750.00 | No | 4/1/2019 |
| PITMAN FAMILY FARMS | Invoice | 4/8/2019 | CI10000212 | $5,111.10 | No | 4/8/2019 |
| PITMAN FAMILY FARMS | Invoice | 4/23/2019 | CI10000222 | $6,281.10 | No | 4/15/2019 |
| PITMAN FAMILY FARMS | Invoice | 4/23/2019 | CI10000223 | $9,810.00 | No | 4/23/2019 |
| **PITMAN FAMILY FARMS** | **Payment** | **4/26/2019** | **010404** | **($35,152.20)** | **No** | |
| PITMAN FAMILY FARMS | Invoice | 5/13/2019 | CI10000303 | $8,190.00 | No | 5/13/2019 |
| PITMAN FAMILY FARMS | Invoice | 5/15/2019 | CI10000252 | $14,310.00 | No | 4/30/2019 |

| PITMAN FAMILY FARMS | Invoice | 5/15/2019 | CI10000253 | $12,150.00 | No | 5/6/2019 |
|---|---|---|---|---|---|---|
| PITMAN FAMILY FARMS | Invoice | 5/15/2019 | CI10000254 | $4,810.50 | No | 5/13/2019 |
| PITMAN FAMILY FARMS | Invoice | 5/21/2019 | CI10000264 | $10,530.00 | No | 5/21/2019 |
| PITMAN FAMILY FARMS | Invoice | 5/30/2019 | CI10000282 | $12,600.00 | No | 5/27/2019 |
| **PITMAN FAMILY FARMS** | **Payment** | **5/30/2019** | **010800** | **($41,800.50)** | **No** | |
| PITMAN FAMILY FARMS | Invoice | 6/10/2019 | CI10000293 | $9,066.60 | No | 6/3/2019 |
| **PITMAN FAMILY FARMS** | **Payment** | **7/9/2019** | **011351** | **($29,856.60)** | **No** | |
| **TOTAL Insider Preference Period Payments** | | | | **($102,831.30)** | | |
| **TOTAL Fraudulent Transfer Period Payments** | | | | **($129,381.30)** | | |

54.     ARKK has conducted an analysis of readily available information of the Debtor and is seeking to avoid the Preferential Transfer Payments made by the Debtor to Pitman Family Farms within the Insider Preference Period.

55.     The Payments occurred between March 6, 2018 and March 6, 2020 (the "Fraudulent Transfer Period"), as well as between December 27, 2017 and March 6, 2020 (the "Iowa UVTA Transfer Period").

56.     ARKK has performed its own due diligence and evaluation of the reasonably known affirmative defenses available to Pitman Family Farms.

57.     After conducting its due diligence and taking into account reasonably knowable affirmative defenses, ARKK has determined that ARKK may avoid the Payments.

58.     No contemporaneous exchange of new value was given to the Debtor on account of the Preferential Transfer Payments because the dates of service are more than three days before the dates of payment.

59.     The Payments were not made in the ordinary course because Simply Essentials made the Payments to Pitman Family Farms with no regularity. Some Payments were made within days of the purchase of baby chicks, while other Payments were made weeks later.

60.     The Payments were not made in ordinary course because, Simply Essentials, when it was insolvent, and under the 100% control of Pitman Farms, prioritized payments to insider Pitman Family Farms while leaving other creditors' claims unpaid.

61.     During the course of this adversary proceeding, ARKK may learn (through discovery or otherwise), of additional transfers made by the Debtor to Pitman Family Farms during the Insider Preference Period, the Fraudulent Transfer Period, and/or the Iowa UVTA Transfer Period. It is ARKK's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Pitman Family Farms or any other transferee. ARKK reserves the right to amend this original Complaint to include: (i) further information regarding the Payments, (ii) additional transfers, (iii) modifications of and/or revisions to the Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by this Court's order dated April 5, 2022 (Dkt. No. 314), if applicable (collectively, the "Amendments"), that may become known to ARKK at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF[1]

### COUNT I
### (Avoidance of Preferential Transfers – 11 U.S.C. § 547)

62.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

63.     Pitman Family Farms is an "insider" of the Debtor as defined in 11 U.S.C. § 101(31).

64.     Simply Essentials paid Pitman Family Farms at least $102,831.30, referred to herein as the Preferential Transfer Payments.

65.     The Preferential Transfer Payments occurred within the Insider Preference Period.

66.     The Preferential Transfer Payments were made to or for the benefit of Pitman Family Farms.

67.     The Preferential Transfer Payments constitute "transfers" within the meaning of section 547 of the Bankruptcy Code.

68.     Each Preferential Transfer Payments was made while the Debtor was insolvent.

69.     As a result of each Preferential Transfer Payment, Pitman Family Farms received more than it would (i) under Simply Essentials' chapter 7 case; (ii) if the Preferential Transfer Payment had not been made; and (iii) if Pitman Family Farms received payment of its debts under the provisions of the Bankruptcy Code like other estate creditors. Simply Essentials' liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Estate.

---

[1] ARKK reserves the right to bring additional fraudulent transfer claims for transfers not set forth herein as well as the right to bring additional preferential transfer claims for transfers not set forth herein.

70.     Pitman Family Farms was the initial transferee of the Preferential Transfer Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Payments were made.

71.     Accordingly, ARKK, as representative of the Estate, is entitled to an order and judgment against Pitman Family Farms avoiding each Preferential Transfer Payment pursuant to section 547 of the Bankruptcy Code.

## COUNT II
### (Recovery of Avoided Transfers – U.S.C. § 550)

72.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

73.     ARKK is entitled to avoid the above-described Preferential Transfer Payment pursuant to section 547(b) of the Bankruptcy Code.

74.     Pitman Family Farms was the initial transferee of the Preferential Transfer Payments or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Preferential Transfer Payment were made.

75.     Pursuant to section 550(a) of the Bankruptcy Code, ARKK is entitled to recover from Pitman Family Farms all Preferential Transfer Payments, plus interest thereon to the date of payment and the costs of this action.

## COUNT III
### (Avoidance and Recovery of Actual Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(A))

76.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

77.     The Payments occurred within two years of the Petition Date.

78.     The Payments constitute "transfers" within the meaning of sections 548, 550, and 551 of the Bankruptcy Code.

79.     David Pitman and Richard Pitman, the beneficial owners of Pitman Family Farms as well as the beneficial owners of Pitman Farms, had access to the Debtor's financial information by virtue of Pitman Farms being the sole owner and manager of Debtor following the Pitman Purchase.

80.     Pitman Family Farms, therefore had access to the Debtor's financial information and knew or should have known of the Debtor's insolvency.

81.     The Payments were made with the actual intent to hinder, delay, or defraud Simply Essentials' other creditors by prioritizing payments to Pitman Family Farms while other creditors went unpaid.

82.     While paying purported debts to Pitman Family Farms, Simply Essentials intentionally "strung along" other creditors of Simply Essentials to delay their enforcement remedies to cause them to become unsecured creditors in the Bankruptcy Case. *See* Exhibits 12, 13.

83.     The Debtor's estate was damaged by the transfer of the Payments for less than or no equivalent value.

84.     Pursuant to section 550(a) of the Bankruptcy Code, ARKK, as representative of the trustee and the estate, is entitled to recover from Pitman Family Farms all Payments, plus interest thereon to the date of payment and the costs of this action.

85.     Accordingly, the Court should avoid the Payments as actual fraudulent transfers, and recover the value of such transfers from Pitman Family Farms, or any other immediate or mediate transferee of the Fraudulent Payments, pursuant to 11 U.S.C. §§ 548, 550, and 551.

**COUNT IV**
**(Avoidance and Recovery of Constructive Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(B))**

86.    ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

87.    Simply Essentials did not receive reasonably equivalent value for the Payments.

88.    Under the control of Pitman Farms, David Pitman, and Richard Pitman, Simply Essentials would process the baby chicks and sell them to Pitman Farms for no or less than reasonably equivalent value.

89.    Simply Essentials was losing millions of dollars per year due to actions like purchasing baby chicks from Pitman Family Farms, processing the chicken, and transferring the chicken to Pitman Farms.

90.    The Payments were transfers made within the two years preceding the filing of the involuntary petition on March 6, 2020.

91.    At the time of each Payment, Debtor's liabilities exceeded its assets.

92.    At the time of each Payment, Debtor was "insolvent" as that term is used in 11 U.S.C. § 548(a)(1)(B).

93.    Pursuant to section 550(a) of the Bankruptcy Code, ARKK is entitled to recover from Pitman Family Farms all Payments, plus interest thereon to the date of payment and the costs of this action.

94.    Accordingly, the Court should avoid the Payments as constructive fraudulent transfers, and recover the value of such transfers from Pitman Family Farms, or any other immediate or mediate transferee of the Payments, pursuant to 11 U.S.C. §§ 548, 550, and 551.

**COUNT V**
**(Avoidance and Recovery of Constructive Fraudulent Transfers - 11 U.S.C § 544, 550, 551,**
**and Iowa Code Chapter 684)**

95.     ARKK incorporates all preceding paragraphs as if fully re-alleged herein.

96.     By operation of 11 U.S.C. § 544, the Trustee is entitled to utilize any applicable non-bankruptcy law to seek avoidance of any transfer.

97.     The State of Iowa has adopted the Iowa Voidable Transactions Act. Iowa Code § 684.15.

98.      At the time the Payments were made to Pitman Family Farms, ARKK was a creditor of Simply Essentials.

99.     The Payments constitute "transfers" within the meaning of Iowa Code § 684.

100.    Simply Essentials made the Payments to Pitman Farms with the actual intent to hinder, delay, and defraud creditors, including ARKK.

101.    Because the Payments were made with actual intent to hinder, delay or defraud any creditor of Simply Essentials, the Payments were made in violation of Iowa Code § 684.4(1)(a).

102.    Pitman Family Farms was an insider of Simply Essentials under Iowa Code § 684.1(8) and shared common beneficial ownership with Pitman Farms—which was the sole member and manager of Simply Essentials at the time the Payments were made.

103.    The Debtor, under the control of Pitman Farms, caused the Payments to be made.

104.    At all relevant times, and as of the Petition Date, there existed actual unsecured creditors of the Debtor who could have avoided any transfer of an interest of the Debtor in property that is avoidable under the Iowa Code pursuant to 11 U.S.C. § 544(b).

105.    ARKK is an unsecured creditor of the Debtor, holding an allowed unsecured claim in the amount of $2.5 million, who could avoid the Payments under nonbankruptcy law.

106.    Simply Essentials did not receive reasonably equivalent value in exchange for the Payments.

107.    Pitman Family Farms' actions and scheme described herein constituted a willful and wanton disregard for the rights of ARKK and other creditors of Simply Essentials.

108.    Pitman Family Farms acted with malice in its intentional disregard for the rights of ARKK and other creditors.

109.    ARKK is entitled to judgment against Pitman Family Farms in the amount of the Payments pursuant to Iowa Code §§ 684.7 and 684.8(2)(a)(1).

110.    Accordingly, the Court should avoid the Payments as actual and constructive fraudulent transfers, and enter judgment against Pitman Family Farms to recover the value of such transfers from Pitman Family Farms, or any other immediate or mediate transferee of the Payments, pursuant to 11 U.S.C. §§ 544, 550, 551 and Iowa Code §§ 684.4, 684.5, and 684.7.

## **RELIEF REQUESTED**

**WHEREFORE,** ARKK respectfully requests that this Court enter an order providing the following relief against Pitman Family Farms:

A.    On Count I, judgment in favor of ARKK and against Pitman Family Farms in the amount of at least $102,831.30 and avoiding the Preferential Transfer Payments;

B.    On Count II, judgment in favor of ARKK and against Pitman Family Farms, directing Pitman Family Farms to return to ARKK the amount of the Preferential Transfer Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

C.    On Count III, judgment in favor of ARKK and against Pitman Family Farms, avoiding the Payments, and directing Pitman Family Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

D.    On Count IV, judgment in favor of ARKK and against Pitman Family Farms, avoiding the Payments, and directing Pitman Family Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

E.    On Count V, judgment in favor of ARKK and against Pitman Family Farms, avoiding the Payments, and directing Pitman Farms to return to ARKK the amount of the Payments, pursuant to 11 U.S.C. § 550, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, plus punitive damages in an amount to be determined at trial, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and,

F.    Such other relief as the Court may deem just and proper.

Dated: February 9, 2023                    Respectfully submitted,

*/s/ Kristina M. Stanger*
Kristina M. Stanger, ID # AT0000255
Leslie C. Behaunek, ID # AT0011563
NYEMASTER, GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa  50309-3899
Tel:  (515) 283-3100
Fax: (515) 283-3100
Email:  kms@nyemaster.com
Email:  lcbehaunek@nyemaster.com

*/s/ Roy Leaf*
Roy R. Leaf, AT0014486
NYEMASTER GOODE, P.C.
625 1st St SE, #400
Cedar Rapids, IA 52401
Telephone: (319) 286-7002
Fax: (319) 286-7050
Email:  rleaf@nyemaster.com

*/s/ Todd J. Ohlms*
Todd J. Ohlms*
PROSKAUER ROSE LLP
West Madison, Suite 3800
Chicago, IL 60602
Tel: 312-962-3537
tohlms@proskauer.com

*/s/ Daniel S. Desatnik*
Daniel S. Desatnik*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: 212-969-3000
ddesatnik@proskauer.com

**ATTORNEYS FOR ARKK FOOD COMPANY**
**\*Pro Hac Vice*

### Certificate of Service

The undersigned certifies, under penalty of perjury, that on this February 9, 2023, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

/s/ *Meagan Breckenridge*