**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| SIMPLY ESSENTIALS, LLC, | ) | |
| | ) | |
| Debtor. | ) | Bankruptcy No. 20-00305 |
| | ) | |

**RULING ON MOTION TO SELL LAWSUIT ASSET**

This matter came before the Court by telephonic hearing on November 18, 2022.  Terry Gibson appeared for Debtor Simply Essentials, LLC ("Debtor").  Dan Childers appeared with Trustee Larry Eide ("Trustee").  Kristina Stanger, Leslie Behaunek, and Daniel Desatnik appeared for ARKK Food Company, Inc. ("ARKK").  Eric Lam and Russell Ryan appeared for Pitman Farms, Inc. ("Pitman Farms").  John McDonald appeared for Pure Prairie Farm, LLC ("Pure Prairie"). The Court heard argument and took the matter under advisement on the papers submitted.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

**BACKGROUND**

Petitioning Creditors filed an involuntary Chapter 7 petition against Debtor on March 6, 2020.  (Bankr. No. 20-00305).  Trustee filed a Motion to Sell and for Other Relief on June 22, 2021, (ECF Doc. 119), and an Amended Motion to Sell on December 2, 2021, (ECF Doc. 214-1), which included an Asset Purchase Agreement between Trustee and Pure Prairie (the "Purchase Agreement"), (ECF

Doc. 214-2).  On December 6, 2021, the Court filed an Order Approving Sale.

(ECF Doc. 227).  After receiving an offer from Pitman Farms to purchase all the

estate's claims against ARKK excluding "Title 11 Part V Actions" (the "Lawsuit

Asset") for $20,000, Trustee filed a Motion to Sell Lawsuit Asset (the "Motion")

on August 12, 2022.  (ECF Doc. 396).  ARKK filed an Objection on September 30,

2022, asserting, among other things, that Trustee had already sold the Lawsuit

Asset to Pure Prairie.  (ECF Doc. 406).  Pure Prairie filed a Joinder in ARKK's

Objection on September 30, 2022.  (ECF Doc. 408).  Petitioning Creditors filed a

Statement of Support and Joinder in ARKK's Objection on October 1, 2022.  (ECF

Doc. 410).  Pitman Farms filed a Brief in Support of Trustee's Motion on October

12, 2022.  (ECF Doc. 414).  ARKK filed a Reply Brief on October 21, 2022.  (ECF

Doc. 416).

At the hearing, Trustee took no further position on the Motion and presented

no argument.  Pure Prairie argued that the Purchase Agreement conveyed the

Lawsuit Asset, which is therefore no longer property of the estate.  ARKK

concurred in that argument and made additional arguments that the Court does not

reach.  Pitman Farms argued that the Lawsuit Asset remains property of the estate

because the Purchase Agreement did not convey causes of action.

2

## DISCUSSION

The Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The general rule is that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  No exception to that rule is relevant here.  The issue here is whether the Lawsuit Asset is currently property of the estate, or whether Trustee previously conveyed it to Pure Prairie under the Purchase Agreement.

This is a question of contract interpretation.  "It is the cardinal principle of contract construction that the parties' intent controls; and except in cases of ambiguity, this is determined by what the contract itself says."  Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents, 471 N.W.2d 859, 862 (Iowa 1991) (citations omitted).  "Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper."  Id. at 863 (citations omitted).  The Court finds no ambiguity here and finds that the parties' intent is covered by the plain meaning of the words in the Purchase Agreement.

The Trustee and Pure Prairie stated in the preamble of the Purchase Agreement that they "wishe[d]" to convey "all of the Business' assets (except as

3

may be specifically set forth otherwise herein)."  The second paragraph of the

preamble defines the "Business": "The Bankruptcy Estate includes [the Plant and

another parcel of real estate], together with related tangible and intangible assets

directly related to the operation of the Plant (hereinafter referred to as the

'Business')."  (ECF Doc. 214-2).  It is not clear from this statement alone whether

the assets of the Business include the Lawsuit Asset.  Whether the parties

conveyed the Lawsuit Asset depends on the Purchase Agreement's operative

provisions.

ARKK, Pure Prairie, and the Petitioning Creditors rely on the clause

providing that property sold includes "intellectual property and other intangible

assets."  (Id. ¶ 2(e)).  Those parties believe that the phrase "other intangible assets"

encompasses causes of action.  The Purchase Agreement also includes a list of

Excluded Assets.  (Id. Ex. E).  The most applicable excluded assets are: "all

accounts receivable and other rights to payment for merchandise sold, or for any

other purpose," (Id. Ex. E(f)), and "all avoidance and fraudulent transfer actions,

and all other actions for recovery of money or property under Bankruptcy Code

Sections 542 through 551, inclusive."  (Id. Ex. E(i)).

ARKK, Pure Prairie, and the Petitioning Creditors also argue that causes of

action are included under the following provision: "All other property of any kind

or nature whatsoever not specifically identified above which is owned by [the

bankruptcy estate] and which is intended for use in or useful in the operation of the

Business (the 'Miscellaneous Property')."  (Id. ¶ 2(f)).

The Court finds and concludes that paragraph 2(e) is dispositive.  That

paragraph specifies that property sold includes "intellectual property and other

intangible assets."  Under Iowa rules of contract interpretation, the court gives

words their ordinary meaning in context.  Iowa Fuel & Mins., 471 N.W.2d at 863.

The Court concludes that the contextual plain meaning of "intangible assets"

covers all other intangible assets out there.  Causes of action are "intangible

assets."  Cf., e.g., Soo Tractor Sweeprake Co. v. Gavin/Solmonese LLC, No. 17-

CV-4006-LTS, 2017 WL 1289866, at *3 (N.D. Iowa Apr. 4, 2017).  The phrase

"intangible asset" is broader than the UCC term "general intangible," which

includes "things in action."  Iowa Code § 544.9102(1)(as).  Like the Purchase

Agreement, the UCC comment on the definition of "general intangible" refers

specifically to intellectual property:

> "General intangible" is the residual category of personal property, including
> things in action, that is not included in the other defined types of collateral.
> Examples are various categories of intellectual property and the right to
> payment of a loan of funds that is not evidenced by chattel paper or an
> instrument.  As used in the definition of "general intangible," "things in
> action" includes rights that arise under a license of intellectual property,
> including the right to exploit the intellectual property without liability for
> infringement.  The definition has been revised to exclude commercial tort
> claims . . . .

Iowa Code § 544.9102 cmt. 5(d). The Court finds no genuine uncertainty here. The reference to "other intangible assets" is not limited by its inclusion in the sentence also referring to "intellectual property." The clause provides that intellectual property **and** intangible assets are property to be sold. It does not say "intellectual property and similar intangible assets" or otherwise tie intangibles to intellectual property.

The Court acknowledges that some of the exclusions in Exhibit E include, or could be read to include, specific causes of action. The Court concludes that causes of action generally are not explicitly or even implicitly included in "other rights to payment for merchandise sold, or for any other purpose." (ECF Doc. 214-2 Ex. E(f)). The Court finds and concludes that Exhibit E excludes only those causes of action specified in paragraph (i).

Paragraph (i) includes "all avoidance and fraudulent transfer actions, and all other actions for recovery of money or property under Bankruptcy Code Section 542 through 551, inclusive." (Id. Ex. E(i)). The Purchase Agreement did not convey to Pure Prairie any claim that the bankruptcy estate could bring against ARKK under one of the enumerated sections of Title 11. Those claims remain property of the estate. The question is whether any part of the Lawsuit Asset is a turnover or avoidance action—what Pitman Farms and Opposing Creditors refer to as a Part V action. (ECF Doc. 414 Ex. 1). The answer is No. Trustee seeks to sell

all the estate's claims against ARKK **except for Part V actions**, (ECF Doc. 396),

but Part V actions are the only causes of action that remain property of the estate

after the sale of assets to Pure Prairie.

Trustee moves to sell an asset that he previously sold, but he may not sell it

twice.  The Court must deny the motion.

## CONCLUSION

Trustee's Motion to Sell Lawsuit Asset is DENIED.

Dated and entered:  April 11, 2023

_____

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE